No. 25-02581

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

———————————————————

IMMIGRANT DEFENDERS LAW CENTER,

*Plaintiff-Appellee*,

v.

KRISTI NOEM, et al.,

*Defendants-Appellants.*

———————————————————

On Appeal from the United States District Court for the
Central District of California
No. 2:20-cv-09893 (Hon. Jesus G. Bernal)

———————————————————

## PLAINTIFF-APPELLEE IMMIGRANT DEFENDERS LAW CENTER'S PRELIMINARY OPPOSITION TO DEFENDANT-APPELLANTS' EMERGENCY MOTION FOR STAY PENDING APPEAL

———————————————————

Matthew T. Heartney
Hannah R. Coleman
Daniel S. Shimell
Allyson C. Meyers
ARNOLD & PORTER
KAYE SCHOLER LLP
777 South Figueroa Street, 44th Fl.
Los Angeles, CA 90017
(213) 243-4000

*Counsel for Plaintiff-Appellee Immigrant Defenders Law Center*
*(continued on next page)*

Kathleen X. Weng
ARNOLD & PORTER
KAYE SCHOLER LLP
601 Massachusetts Avenue, N.W.
Washington, D.C. 20001
(202) 942-5000

Melissa Crow
CENTER FOR GENDER &
REFUGEE STUDIES
1121 14th Street, NW, Suite 200
Washington, D.C. 20005
(202) 355-4471

Victoria F. Neilson
NATIONAL IMMIGRATION PROJECT
OF THE NATIONAL LAWYERS GUILD
1763 Columbia Road NW, Suite 175 #896645
(202) 470-2082

Stephen W. Manning
Jordan Cunnings
Kelsey Provo
Tess Hellgren
Rosa Saavedra Vanacore
INNOVATION LAW LAB
333 SW 5th Ave, Suite 200
Portland, OR 97204
(503) 922-3042

# **TABLE OF CONTENTS**

Page

INTRODUCTION ..................................................................1

ARGUMENT .......................................................................2

   I.  Defendants Have Failed to Show That Any "Emergency" Exists Justifying an Extremely Accelerated Briefing Schedule on This Motion.......................2

   II. This Court Does Not Have Appellate Jurisdiction. ..........................5

      A. The Court's Order Does Not Have the "Practical Effect of the Grant or Denial of An Injunction." ................................................6

      B. Defendants Have Not Demonstrated That the District Court's Order Has "Serious, Perhaps Irreparable Consequences." ...............................8

      C. Defendants Have Not Demonstrated That the District Court's Order "Can Be Effectively Challenged Only by Immediate Appeal." ...........................10

   III. Defendants' Emergency Motion Is Substantively Without Merit..............10

CONCLUSION ....................................................................11

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Abbott v. Perez*,
   585 U.S. 579 (2018)..........................................................................5, 7

*Alliance for Hippocratic Medicine v. FDA*,
   No. 23-10362, 2023 WL 2913725 (5th Cir. Apr. 12, 2023)................7

*Alsea Valley All. v. Dep't of Com.*,
   358 F.3d 1181 (9th Cir. 2004) ..........................................................10

*Bennett v. Medtronic, Inc.*,
   285 F.3d 801 (9th Cir. 2002) ...............................................................5

*Department of Education v. California*,
   145 S. Ct. 966 (2025)...........................................................................7

*Monsanto Co. v. Geerston Seed Farms*,
   561 U.S. 139 (2010)..............................................................................6

*Nken v. Holder*,
   556 U.S. 418 (2009)..........................................................................6, 7

*Texas v. Biden*,
   646 F. Supp. 3d 753 (N.D. Tex. 2022) .................................................6

*Texas v. Biden*,
   No. 21-cv-0067 (N.D. Tex.), ECF No. 205 .........................................9

*Thompson v. Enomoto*,
   815 F.2d 1323 (9th Cir. 1987) .............................................................5

*United States v. El Dorado County*,
   704 F.3d 1261 (9th Cir. 2013) .......................................................9, 10

*Washington v. Trump*,
   No. 25-807, 2025 WL 553485 (9th Cir. Feb. 19, 2025) (Forrest, J.,
   concurring), *application for stay filed*, 604 U.S., Nos. 24A884,
   24A885, 24A886 (Apr. 17, 2025)................................................2, 3, 4

iv

*Wyoming v. DOI*,
    No. 18-8027, 2018 WL 2727031 (10th Cir. June 4, 2018) ...........................9, 10

**Statutes**

8 U.S.C. §1225(b)(2)(C) ...............................................................................8

8 U.S.C. § 1252(f)(1) ....................................................................................6

28 U.S.C. § 1292(a)(1)...................................................................................5

**Other Authorities**

Ninth Circuit Rule 27-3................................................................................2

## INTRODUCTION

Defendants-Appellants' ("Defendants") Emergency Motion for a Stay Pending Appeal ("Emergency Motion") should be denied. Plaintiff-Appellee Immigrant Defenders Law Center ("Plaintiff") files this preliminary opposition because Defendants have arbitrarily and unilaterally picked Monday, May 12 as the requested date for this Court to issue a stay pending appeal. Defendants gave Plaintiff just hours' notice of this request three court days before the requested effective date of a stay pending appeal. As a result, Plaintiff has not had sufficient time to respond fully to the Emergency Motion and files this Preliminary Opposition out of necessity.

No "emergency" exists justifying Defendants' proposed breakneck schedule because Defendants fail to submit any evidence showing that they could even roll out their renewed Migrant Protection Protocols ("MPP 1.0") even if the Court were to grant a stay pending appeal. Defendants also fail to explain why they selected May 12, 2025 as the date when a stay should take effect.

In addition, the Emergency Motion lacks merit because this Court does not have appellate jurisdiction, and Defendants have not demonstrated that they are entitled to emergency relief even if the Court did have jurisdiction. These are additional reasons the Court should not, as Defendants request, issue a stay pending

appeal on a highly irregular, rushed schedule that deprives Plaintiff of a meaningful opportunity to respond.

Consequently, if the Court does not deny the Emergency Motion outright based on the discussion Plaintiff presents below, then the Court should set a reasonable briefing schedule that provides Plaintiff with a meaningful opportunity to be heard. Even though Defendants have failed to demonstrate any reason for deviating from the usual schedule for briefing a motion, Plaintiff would agree to its Opposition being due on May 16, 2025 and requests that the Court so order.[1]

## ARGUMENT

## I. Defendants Have Failed to Show That Any "Emergency" Exists Justifying an Extremely Accelerated Briefing Schedule on This Motion.

"Granting relief on an emergency basis is the exception, not the rule." *Washington v. Trump*, No. 25-807, 2025 WL 553485, at *1 (9th Cir. Feb. 19, 2025) (Forrest, J., concurring), *application for stay filed*, 604 U.S., Nos. 24A884, 24A885, 24A886 (Apr. 17, 2025). To demonstrate that there truly is an "emergency," the moving party must "state the facts showing the existence and nature of the claimed emergency." *Id.* (quoting Ninth Circuit Rule 27-3). Defendants have failed to make

---

[1] Notably, Defendants did not comply with this Court's requirement that they "make every practicable effort to notify . . . opposing counsel . . . at the earliest possible time," nor did they "explain why the motion could not have been filed earlier." Ninth Circuit Local Rule 27-3(a) and (c)(iii). Had Defendants done so, perhaps the parties could have agreed on a briefing schedule.

this showing, and their conduct in the District Court proceedings belies their purported "emergency."

*Immigrant Defenders Law Center v. Noem*, which is currently proceeding before the District Court, challenges the 2019 implementation of MPP 1.0. On January 21, 2025, Defendants announced the reimplementation of the same exact policy and guidance at issue in that litigation. The District Court correctly stayed the reimplementation of MPP 1.0 in order to maintain the status quo and avoid subjecting Plaintiffs and class members to a policy that may ultimately be held unlawful. Order Granting Pl.'s Ex Parte Application, No. 2:20-cv-09893-JGB-SHK [ECF No. 405] ("Order").

The sole explanation that Defendants provide for their manufactured "emergency" is that the District Court's Order "prevent[s] the Department of Homeland Security from using an important discretionary tool for securing the border." Defendants' Emergency Motion [ECF No. 8.1] ("Motion") at p. vi. This justification is not sufficient to demonstrate that Defendants are "entitled to immediate relief." *Washington*, 2025 WL 553485, at *1 (Concurring).

As Judge Forrest noted in her recent concurring opinion to an order in which this Court denied an emergency motion filed by the government:

> It is routine for both executive and legislative policies to be challenged in court . . . [J]ust because a district court grants preliminary relief halting a policy advanced by one of the political branches does not in

3

and of itself an emergency make. A controversy, yes. Even an important controversy, yes. An emergency, not necessarily.

*Id.*

Here, Defendants have not provided *any* compelling reason, much less evidence, that would justify the extraordinary emergency relief they seek. Defendants' own conduct in the District Court proceedings confirms that their requested relief is not an emergency. The District Court granted the nationwide stay on April 16, 2025. *See* Order. Defendants then waited *five days* before filing their ex parte application to stay the court's order. *See* Defs.' Ex Parte Application, No. 2:20-cv-09893-JGB-SHK [ECF No. 407] (attached as Exhibit A).[2] If this situation were truly the red-hot "emergency" Defendants suggest, surely they would not have waited five days to seek a stay from the District Court.

Further, Defendants' ex parte application has been pending with the District Court for *over two weeks*. Nevertheless, Defendants provided counsel for Plaintiff with less than five hours of advance notice of their intent to file an Emergency Motion with this Court seeking relief to be entered just three court days later. Defendants thereby deprived Plaintiff of a meaningful opportunity to oppose

---

[2] Defendants' Ex Parte Application to Stay the Stay of Agency Action Under 5 U.S.C. § 705, filed in the District Court on April 21, 2025, is attached as **Exhibit A**. Plaintiff's Opposition to the Ex Parte Application to Stay, filed in the District Court on April 23, 2025, is attached as **Exhibit B**.

Defendants' Emergency Motion. As discussed further below in connection with Defendants' failure to demonstrate irreparable harm, there is no emergency that justifies the extremely accelerated schedule Defendants urge the Court to adopt.

## II. This Court Does Not Have Appellate Jurisdiction.

Defendants incorrectly appealed the District Court's stay of agency action pursuant to 28 U.S.C. § 1292(a)(1), which allows an appeal of a preliminary injunction. However, the District Court did not issue a preliminary injunction; it issued a stay of agency action pursuant to 5 U.S.C. § 705. Defendants do not fully acknowledge this distinction, contending that "the essence of the order, not its moniker" controls, and that the "practical effect" of a Section 705 stay is the same as an injunction. Motion at 9 (citing *Bennett v. Medtronic, Inc.*, 285 F.3d 801, 804 (9th Cir. 2002); *Abbott v. Perez*, 585 U.S. 579, 594 (2018))). Defendants fail to correctly identify, much less satisfy, the established test for appealing an order other than a preliminary injunction under Section 1292(a)(1).

To establish that an interlocutory order other than a preliminary injunction is nevertheless appealable under Section 1292(a)(1), the appealing party must show that the order (1) has "the practical effect of the grant or denial of an injunction;" (2) has "serious, perhaps irreparable consequences;" and (3) can be "effectively challenged only by immediate appeal." *Thompson v. Enomoto*, 815 F.2d 1323,

1326–27 (9th Cir. 1987). Defendants must establish all three requirements to vest

jurisdiction, but their Emergency Motion does not establish even one.

### A. The Court's Order Does Not Have the "Practical Effect of the Grant or Denial of An Injunction."

Relief under the APA in the form of a Section 705 stay is interim relief

postponing the effective date of a challenged agency action, and is not an injunction.

Courts have recognized this distinction in interpreting 8 U.S.C. § 1252(f)(1), which

provides in pertinent part that:

> [N]o court (other than the Supreme Court) shall have jurisdiction or authority to enjoin or restrain the operation of the provisions of part IV of this subchapter, as amended by the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, other than with respect to the application of such provisions to an individual [noncitizen] against whom proceedings under such part have been initiated.

While an injunction is a "drastic and extraordinary remedy," vacatur of an

agency's action is "less drastic," *Monsanto Co. v. Geerston Seed Farms*, 561 U.S.

139, 165 (2010), and a Section 705 stay is an "interim or lesser form" of relief than

vacatur. *Texas v. Biden*, 646 F. Supp. 3d 753, 769 (N.D. Tex. 2022). As the District

Court explained, an injunction and a stay both "can have the practical effect of

preventing some action before the legality of that action has been conclusively

determined." Order at 17 (quoting *Nken v. Holder*, 556 U.S. 418, 428–29 (2009)).

"But a stay achieves this result by temporarily suspending the source of authority to

6

act – the order or judgment in question – not by directing an actor's conduct." *Id.* (quoting *Nken*, 556 U.S. at 428–29).

To argue that the District Court's Order is effectively an injunction, Defendants rely on inapposite cases. For example, in *Abbott v. Perez*, 585 U.S. 579 (2018), the Court held that the challenged orders "were effectively injunctions in that they barred Texas from using the districting plans now in effect to conduct this year's elections." *Id.* at 594. Likewise, in *Department of Education v. California*, 145 S. Ct. 966 (2025), the Court ruled that a TRO was an appealable preliminary injunction because, *inter alia*, it required the government to pay money that it was unlikely to recoup if the injunction were reversed. *Id.* at 968. And in *Alliance for Hippocratic Medicine v. FDA*, No. 23-10362, 2023 WL 2913725 (5th Cir. Apr. 12, 2023), the Fifth Circuit held only that it had interlocutory appellate jurisdiction over the district court's Section 705 stay because "[b]oth parties recognize[d]" that the order at issue "would have the practical effect of an injunction because it would remove mifepristone from the market." *Id.* at *3 n.3. Here, Plaintiff disputes that the District Court's Order has the "practical effect of an injunction," because, unlike the facts in *Hippocratic Medicine*, the District Court's Order does not change the status quo as Defendants have not demonstrated that they are able to roll out the reinstated MPP 1.0.

Section 705 provides that "the reviewing court" may "*postpone* the effective date of an agency action." 5 U.S.C. § 705 (emphasis added). And the District Court's Order only stays the challenged action "pending the conclusion of this litigation." Order at 8. This is not the same as an injunction.

## B.  Defendants Have Not Demonstrated That the District Court's Order Has "Serious, Perhaps Irreparable Consequences."

Defendants claim irreparable injury on the sole ground that "the district court's order restrains DHS's actions in implementing 8 U.S.C. §1225(b)(2)(C) and applies nationwide." Motion at 9. This argument falls far short of the serious injury necessary to show appealability. At the hearing on the motion for a stay, Defendants' counsel conceded that she did not know whether *anyone* had been removed under the reinstated MPP 1.0. *See* Mot. Tr. at 24:8–15, March 31, 2025 [ECF No. 8.1]. Suggesting that DHS has chosen to prioritize other border policies in recent months, Defendants' counsel indicated that the re-implemented "MPP has been used on a limited basis . . . due to DHS using other authorities." *Id.* at 24:15–20. Neither Defendants' ex parte application nor their Emergency Motion suggests that the government's priorities had shifted by the time the District Court issued the stay two weeks later.

Nor did Defendants' counsel know whether Mexico had agreed to accept the return of asylum seekers. *Id.* at 24:21–25. As the government has previously represented, "[b]ecause the United States cannot unilaterally return noncitizens to

Mexico under MPP without Mexico's consent, their withdrawal of consent renders restarting MPP impossible." *Texas v. Biden*, No. 21-cv-0067 (N.D. Tex.), ECF No. 205, at 4. Indeed, the present motion states that MPP 1.0 was not implemented during the Biden Administration "due to Mexico's unwillingness to accept [noncitizens]." Motion at 2 (as a result of Mexico's position, "MPP was never actually applied on the ground").

And while Defendants claimed that they were reinstating MPP 1.0 because "the conditions preventing application of MPP on the ground had changed" (Motion at 2), Defendants did not publicly identify those supposed changes at the time of reinstatement and Defendants' counsel could not identify them at the hearing, either. Mot. Tr. at 4:9–5:25, March 31, 2025 [ECF No. 8.1]. It has now been over five weeks since that hearing, and Defendants do not make any representations in their present motion as to whether the Government of Mexico has consented to accept asylum seekers subjected to MPP 1.0. Thus, as in *United States v. El Dorado County*, 704 F.3d 1261 (9th Cir. 2013), "[t]he government has not shown that it will suffer serious, perhaps irreparable harm if [the Court] do[es] not review the district court's order now." *Id.* at 1265.[3]

---

[3] Defendants' reliance on *Wyoming v. DOI*, No. 18-8027, 2018 WL 2727031, at *1 (10th Cir. June 4, 2018), is misguided. Motion at 9. In *Wyoming*, the Tenth Circuit ruled that a stay of a Bureau of Land Management regulation was appealable where

9

## C.   Defendants Have Not Demonstrated That the District Court's Order "Can Be Effectively Challenged Only by Immediate Appeal."

Because Defendants cannot show that the interim order they attack will significantly impair their ability to enforce the immigration laws, their appeal from a final judgment in the District Court is an effective remedy.  Defendants have not, and cannot, establish that "the order can only be challenged by immediate appeal." *El Dorado Cnty.*, 704 F.3d at 1265.  This is because the District Court's Order only grants a stay of agency action "pending the conclusion of this litigation."  Order at 8. In other words, "[o]nce the district court has held its evidentiary hearing and enters the final judgment, the government can appeal the same legal issues."  *Dorado Cnty.*, 704 F.3d at 1265 (Ninth Circuit did not have jurisdiction under Section 1292(a)(1) over appeal of district court order).  Defendants have failed to show that the District Court's Order "can be effectively challenged only by immediate appeal," and thus, this Court does not have jurisdiction over the appeal.

## III.   Defendants' Emergency Motion Is Substantively Without Merit.

Of course, this Court's lack of appellate jurisdiction is a show-stopper that prevents entry of a stay pending appeal.  *See, e.g.*, *Alsea Valley All. v. Dep't of Com.*,

---

the stay "result[ed] in a serious, perhaps irreparable, consequence in that the environmental benefits of the Rule will not be realized." *Id.* at *1.  For the reasons stated above, Defendants have failed to show that the District Court's Order has "result[ed] in a serious, perhaps irreparable, consequence."  *Id.*

358 F.3d 1181, 1186 (9th Cir. 2004) (dismissing appeal for lack of jurisdiction because the district court's order did not "have the practical effect of entering an injunction"). But even if this Court exercises jurisdiction, the arguments that Defendants raise in their Emergency Motion are meritless for the reasons discussed in Plaintiff's opposition brief filed in the District Court in response to Defendants' request for a stay pending appeal. *See* Exhibit B.

As explained above, Plaintiff did not have adequate time on the Defendants' proposed, unreasonably rushed schedule to prepare a substantive response on the merits of Defendants' request for a stay pending appeal at this juncture. That is why, as an interim measure, Plaintiff submits its response in the District Court for this Court's consideration. And, for the reasons stated above, Plaintiff respectfully requests an additional seven days to fully respond to the arguments raised in Defendants' 23-page Emergency Motion.

## CONCLUSION

For the foregoing reasons, (a) the so-called Emergency Motion should be denied outright or, in the alternative, (b) Plaintiff should be given until May 16, 2025 to file a complete opposition.

11

Dated:  May 9, 2025

Kathleen X. Weng
ARNOLD & PORTER KAYE
SCHOLER LLP
601 Massachusetts Avenue, N.W.
Washington, D.C. 20001
(202) 942-5000

Victoria F. Neilson
NATIONAL IMMIGRATION
PROJECT OF THE NATIONAL
LAWYERS GUILD
1763 Columbia Road NW, Suite 175
(202) 470-2082

Stephen W. Manning
Jordan Cunnings
Kelsey Provo
Tess Hellgren
Rosa Saavedra Vanacore
INNOVATION LAW LAB
333 SW 5th Ave, Suite 200
Portland, OR 97204
(503) 922-3042

Respectfully submitted,

By: */s/ Matthew T. Heartney*
    Matthew T. Heartney
    Hannah R. Coleman
    Daniel S. Shimell
    Allyson C. Meyers
    ARNOLD & PORTER KAYE
    SCHOLER LLP
    777 South Figueroa Street, 44th Fl.
    Los Angeles, CA 90017
    (213) 243-4000

Melissa Crow
CENTER FOR GENDER &
REFUGEE STUDIES
1121 14th Street, NW, Suite 200
Washington, D.C. 20005
(202) 355-4471

*Attorneys for Plaintiff-Appellee*

## CERTIFICATE OF SERVICE

I hereby certify that on May 9, 2025, I caused the foregoing brief to be electronically filed using the CM/ECF system.  I certify that counsel for the parties are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

Dated:  May 9, 2025                                    */s/ Matthew T. Heartney*
                                                                         Matthew T. Heartney

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Fed. R. App. P. 29(a)(5) and Circuit Rule 28.1-1 because the brief contains 2,580 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).  This brief complies with the typeface and type style requirements of Fed. R. App. P. 32(a)(5) and 32(a)(6), respectively, because this brief has been prepared in a proportionately spaced typeface using Microsoft Word for Office 365 in Times New Roman 14-point font.

Dated:  May 9, 2025                                    */s/ Matthew T. Heartney*
                                                                         Matthew T. Heartney

# EXHIBIT A

(20 of 65), Page 20 of 65    Case: 25-2581, 05/09/2025, DktEntry: 9.1, Page 20 of 65
Case 2:20-cv-09893-JGB-SHK    Document 407    Filed 04/21/25    Page 1 of 22    Page ID
#:7312

YAAKOV M. ROTH
Acting Assistant Attorney General
Civil Division
DREW C. ENSIGN
Deputy Assistant Attorney General
BRIAN C. WARD
CATHERINE M. RENO
CARA E. ALSTERBERG
(Cal. Bar No. 319326)
MICHAEL D. ROSS
Trial Attorney
ALANNA T. DUONG
(AZ Bar No. 031641)
Senior Litigation Counsel
Office of Immigration Litigation
General Litigation and Appeals Section
Civil Division, Department of Justice
P.O. Box 878, Ben Franklin Station
Washington, D.C. 20044
Tel: (202) 305-7040
Fax: (202) 305-7000
alanna.duong@usdoj.gov

BILAL A. ESSAYLI
United States Attorney
DAVID M. HARRIS
Assistant United States Attorney
Chief, Civil Division
JOANNE S. OSINOFF
Assistant United States Attorney
Chief, Complex and Defensive
Litigation Section
CHRISTINA MARQUEZ
(Cal. Bar No. 305301)
JASON K. AXE
(Cal. Bar No. 187101)
Assistant United States Attorneys
Federal Building, Suite 7516
300 North Los Angeles Street
Los Angeles, California 90012
Tel: (213) 894-8790
Fax: (213) 894-7819
Jason.Axe@usdoj.gov

*Attorneys for Defendants*

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA - EASTERN DIVISION

| | |
|---|---|
| IMMIGRANT DEFENDERS LAW CENTER, *et al.*,<br><br>              Plaintiffs,<br><br>      v.<br><br>KRISTI NOEM, *et al.*,<br><br>              Defendants. | Case No. 2:20-cv-09893-JGB-SHK<br><br>**DEFENDANTS' EX PARTE APPLICATION TO STAY THE STAY OF AGENCY ACTION UNDER 5 U.S.C. § 705; MEMORANDUM OF POINTS AND AUTHORITIES; [PROPOSED] ORDER**<br><br>Honorable Jesus G. Bernal<br>United States District Judge |

(21 of 65), Page 21 of 65      Case: 25-2581, 05/09/2025, DktEntry: 9.1, Page 21 of 65
Case 2:20-cv-09893-JGB-SHK    Document 407    Filed 04/21/25    Page 2 of 22    Page ID
#:7313

# **TABLE OF CONTENTS**

*EX PARTE* APPLICATION

MEMORANDUM OF POINTS AND AUTHORITIES ........................................... 1

INTRODUCTION .............................................................................................. 1

STANDARD ...................................................................................................... 1

ARGUMENT ...................................................................................................... 2

    I.      Defendants are likely to succeed on the merits ...................................... 2

          A.     ImmDef lacks standing and its claims are outside the
                  INA's "zone of interest." ............................................................... 2

          B.     ImmDef's claims are not ripe for judicial review. ........................ 4

          C.     ImmDef's *ex parte* motion is procedurally barred. ....................... 4

          D.     ImmDef's stay request is not justiciable ....................................... 4

          E.     MPP does not involve content-based restrictions on
                  speech. ............................................................................................ 8

          F.     8 U.S.C. § 1252(a)(5) and (b)(9) bar ImmDef's right-to-
                  counsel and asylum claims because they are inextricably
                  linked to removal proceedings. ...................................................... 9

          G.     MPP does not violate the INA's right to counsel in
                  removal proceedings. .................................................................... 10

          H.     MPP does not violate the INA's right to apply for asylum. ......... 10

    II.     The balance of harm strongly favors a stay. ......................................... 11

          A.     The Court's injunction irreparably harms the Government
                  and the public (factors 3 and 4). ................................................... 11

          B.     A stay pending appeal will not substantially harm
                  ImmDef (factor 2). ....................................................................... 13

CONCLUSION ................................................................................................ 14

LOCAL RULE 11-6.2 CERTIFICATE OF COMPLIANCE

[PROPOSED] ORDER

(22 of 65), Page 22 of 65    Case: 25-2581, 05/09/2025, DktEntry: 9.1, Page 22 of 65
Case 2:20-cv-09893-JGB-SHK    Document 407    Filed 04/21/25    Page 3 of 22    Page ID
#:7314

# TABLE OF AUTHORITIES

Page(s)

## Cases

*Arroyo v. DHS,*
No. 19-815 JGB-SHKx, 2019 WL 2912848 (C.D. Cal. June 20, 2019) ................. 8

*Am. Tort Reform Ass'n v. OSHA,*
738 F.3d 387 (D.C. Cir. 2013) ................................................................. 6

*Arizona v. United States,*
567 U.S. 387 (2012) ............................................................................. 8

*Bennett v. Spear,*
520 U.S. 154 (1997) ............................................................................. 6

*Biden v. Texas,*
597 U.S. 785 (2022) ............................................................................ 5, 8

*Califano v. Yamasaki,*
442 U. S. 682 (1979) ........................................................................... 12

*California v. Azar,*
911 F.3d 558 (9th Cir. 2018) ................................................................. 12

*D&G Holdings, LLC v. Sylvia Mathews Burwel,*
156 F. Supp. 3d 798 (W.D. La. 2016) ...................................................... 7

*DHS v. Thuraissigiam,*
591 U.S. 103 (2020) ......................................................................... 10, 11

*E. Bay Sanctuary Covenant v. Biden,*
993 F.3d 640 (9th Cir. 2021) ................................................................. 11

*E. Bay Sanctuary Covenant v. Trump,*
932 F.3d 742 (9th Cir. 2018) ................................................................. 3

*E.O.H.C. v. Sec'y United States Dep't of Homeland Sec.,*
950 F.3d 177 (3d Cir. 2020) ................................................................. 9

(23 of 65), Page 23 of 65    Case: 25-2581, 05/09/2025, DktEntry: 9.1, Page 23 of 65
Case 2:20-cv-09893-JGB-SHK    Document 407    Filed 04/21/25    Page 4 of 22    Page ID
#:7315

*Food & Drug Administration v. Alliance for Hippocratic Medicine*,
  602 U.S. 367 (2024) ........................................................................... 2

*Garland v. Aleman Gonzalez*,
  596 U.S. 543 (2022) ......................................................................... 5, 6

*Havens Realty Corp. v. Coleman*,
  455 U.S. 363 (1982) ............................................................................ 2

*Innovation Law Lab v. Wolf*,
  No. 19-15716, 2020 WL 964402 (9th Cir. Feb. 28, 2020) ...................... 6

*INS v. Legalization Assistance Project*,
  510 U.S. 1301 (1993) ..................................................................... 3, 11

*J.E.F.M. v. Lynch*,
  837 F.3d 1026 (9th Cir. 2016) ............................................................. 3

*Labrador v. Poe*,
  144 S. Ct. 921 (2024) ........................................................................ 12

*Lincoln v. Vigil*,
  508 U.S. 182 (1993) ............................................................................ 8

*Louisiana v. Becerra*,
  20 F.4th 260 (5th Cir. 2021) .............................................................. 12

*Lujan v. Nat'l Wildlife Fed.*,
  497 U.S. 871 (1990) ......................................................................... 4, 6

*Maryland v. King*,
  567 U.S. 1301 (2012) ........................................................................ 11

*Ne. Ohio Coal. for Homeless & Serv. Emps. Int'l Union, Loc. 1199 v. Blackwell*,
  467 F.3d 999 (6th Cir. 2006) ............................................................... 7

*Nken v. Holder*,
  556 U.S. 418 (2009) ............................................................. 1, 5, 6, 13

*Off. of Pers. Mgmt. v. Am. Fed'n of Gov't Emps., AFL-CIO*,
  473 U.S. 1301 (1985) .......................................................................... 7

DEFENDANTS' EX PARTE APPLICATION FOR A STAY

(24 of 65), Page 24 of 65    Case: 25-2581, 05/09/2025, DktEntry: 9.1, Page 24 of 65
Case 2:20-cv-09893-JGB-SHK    Document 407    Filed 04/21/25    Page 5 of 22    Page ID
#:7316

1  *Orozco-Lopez v. Garland*,
2     11 F.4th 764 (9th Cir. 2021)...................................................................10
3  *Ramos v. Wolf*,
4     975 F.3d 872 (9th Cir. 2020)...............................................................12
5  *Reno v. Am.-Arab Anti-Discrimination Comm.*,
6     525 U.S. 471 (1999)...........................................................................13
7  *RMS NA, Inc. v. RMS (AUS) Pty Ltd*,
8     No. 24-CV-01366-AJB-MMP, 2024 WL 4869193 (S.D. Cal. Oct. 21, 2024).......7, 8
9  *Scripps-Howard Radio v. FCC*,
10    316 U.S. 4 (1942)................................................................................ 5
11 *Sierra Club v. Jackson*,
12    833 F. Supp. 2d 11 (D.D.C. 2012)....................................................... 7
13 *Texas v. Biden*,
14    646 F. Supp. 3d 753 (N.D. Tex. 2022) ................................................ 8
15 *Texas v. United States*,
16    809 F.3d 134 (5th Cir. 2015)............................................................... 8
17 *Trump, President of the U.S., et al. v. CASA, Inc., et al.*,
18    604 U.S. __ (Order) (Apr. 17, 2025) ..................................................12
19 *Trump, President of the U.S., et al. v. Washington, et al.*,
20    604 U.S. __ (Order) (Apr. 17, 2025) ..................................................12
21 *Trump, President of the U.S., et al. v. New Jersey, et al.*,
22    604 U.S. __ (Order) (Apr. 17, 2025) ..................................................12
23 *United States ex rel. Knauff v. Shaughnessy*,
24    338 U.S. 537 (1950)...........................................................................11
25 *United States v. Texas*,
26    599 U.S. 670 (2023)........................................................................4, 12
27 *Wolf v. Innovation L. Lab*,
28    No. 19A960, 140 S. Ct. 1564 (Mar. 11, 2020) (mem.)............................ 6

DEFENDANTS' EX PARTE APPLICATION FOR A STAY

(25 of 65), Page 25 of 65    Case: 25-2581, 05/09/2025, DktEntry: 9.1, Page 25 of 65
Case 2:20-cv-09893-JGB-SHK    Document 407    Filed 04/21/25    Page 6 of 22    Page ID
#:7317

**Statutes**

5 U.S.C. § 705 ...................................................................................................1, 7

5 U.S.C. § 701(a)(2)............................................................................................. 8

8 U.S.C. § 1158(a) ............................................................................................... 3

8 U.S.C. § 1158(d)(1) .........................................................................................10

8 U.S.C. § 1225(b)(2)(C) ........................................................................... 1, 5, 10

8 U.S.C. § 1229a.................................................................................................10

8 U.S.C. § 1229a(b)(4)(A) ..................................................................................10

8 U.S.C. § 1252 ................................................................................................... 3

8 U.S.C. § 1252(a)(2)(B)(ii)................................................................................ 3

8 U.S.C. § 1252(a)(5)........................................................................................... 9

8 U.S.C. § 1252(b)(9)........................................................................................... 9

8 U.S.C. § 1252(f)(1)........................................................................................... 4

8 U.S.C. § 1362 ..................................................................................................10

**Other Authorities**

*S. Bray & P. Miller, Getting Into Equity*,

  97 N. D. L. Rev. 1763 (2022)...........................................................................12

DEFENDANTS' EX PARTE APPLICATION FOR A STAY

(26 of 65), Page 26 of 65     Case: 25-2581, 05/09/2025, DktEntry: 9.1, Page 26 of 65
Case 2:20-cv-09893-JGB-SHK     Document 407     Filed 04/21/25     Page 7 of 22     Page ID
#:7318

# *EX PARTE* APPLICATION

Defendants, through their undersigned counsel, hereby apply *ex parte* pursuant to Local Rule 7-19 for an Order from this Court to stay, pending appeal, its order staying reimplementation of the Migrant Protection Protocols ("MPP") policy nationwide. This *ex parte* application is based upon this application and accompanying memorandum of points and authorities. A proposed order has been lodged with the Court. **Urgency:** This order is sought by means of an *ex parte* application because there is insufficient time to file a noticed motion. Plaintiff's counsel indicated on April 17, 2025, that they were unwilling to stipulate to a two-week stay of this Court's order and opposed Defendants' *ex parte* application. **Notice:** Notice was provided to Plaintiff's counsel via email and telephone on April 17 and 21, 2025, respectively. Defendants agreed to an additional 24 hours (until April 23, 2025) for Plaintiff to respond.

Dated: April 21, 2025                                    Respectfully submitted,

BILAL A. ESSAYLI                              YAAKOV M. ROTH
United States Attorney                        Acting Assistant Attorney General
                                              Civil Division
DAVID M. HARRIS
Assistant United States Attorney              DREW C. ENSIGN
Chief, Civil Division                         Deputy Assistant Attorney General

JOANNE S. OSINOFF                             BRIAN C. WARD
Assistant United States Attorney              CATHERINE M. RENO
Chief, Complex and Defensive                  CARA E. ALSTERBERG
Litigation Section                            Senior Litigation Counsel
                                              MICHAEL D. ROSS
CHRISTINA MARQUEZ                             Trial Attorney
(Cal. Bar No. 305301)
JASON K. AXE                                  */s/ Alanna T. Duong*
(Cal. Bar No. 187101)                         ALANNA T. DUONG
Assistant United States Attorneys             (AZ Bar No. 031641)
Federal Building, Suite 7516                  Senior Litigation Counsel
300 North Los Angeles Street                  Office of Immigration Litigation
Los Angeles, California 90012                 Civil Division, Department of Justice
Tel: (213) 894-8790                           P.O. Box 878, Ben Franklin Station
Fax: (213) 894-7819                           Washington, D.C. 20044
Jason.Axe@usdoj.gov                           *Attorneys for the Defendants*

(27 of 65), Page 27 of 65    Case: 25-2581, 05/09/2025, DktEntry: 9.1, Page 27 of 65
Case 2:20-cv-09893-JGB-SHK    Document 407    Filed 04/21/25    Page 8 of 22    Page ID
#:7319

## MEMORANDUM OF POINTS AND AUTHORITIES

### INTRODUCTION

MPP is a Department of Homeland Security ("DHS") policy adopted in 2019 that applies to aliens arriving in the United States by land from Mexico illegally or without proper documents. MPP exercises DHS's express authority to return aliens temporarily to Mexico during their removal proceedings under 8 U.S.C. § 1225(b)(2)(C). On February 11, 2025, Immigrant Defenders Law Center ("ImmDef"), one of the organizational Plaintiffs in the underlying lawsuit, filed an *ex parte* application for a nationwide stay of the reimplementation of the 2019 MPP policy under 5 U.S.C. § 705 of the Administrative Procedure Act ("APA") pending a ruling on the merits. On April 16, 2025, this Court granted ImmDef's *ex parte* application. Defendants now bring this *ex parte* application for a stay. Because Defendants have made a strong showing of success on the merits and the balance of harm strongly favors Defendants, this Court should grant this application and stay its order staying the reimplementation of MPP pending appeal to the United States Court of Appeals for the Ninth Circuit. Alternatively, this Court should stay its order pending Defendants' filing of a stay motion with the Ninth Circuit. Finally, if this Court declines to stay its order, it should at least narrow its scope to the Central District of California to tailor the remedy to the specific harm allegedly shown.

### STANDARD

To evaluate whether to issue a stay pending appeal, courts consider four factors: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Nken v. Holder*, 556 U.S. 418, 434 (2009). The first two factors "are the most critical[,]" and the final factors merge where, as here, the government is a party. *Id*. at 434–35.

(28 of 65), Page 28 of 65    Case: 25-2581, 05/09/2025, DktEntry: 9.1, Page 28 of 65
Case 2:20-cv-09893-JGB-SHK    Document 407    Filed 04/21/25    Page 9 of 22    Page ID
#:7320

## ARGUMENT

**I.     Defendants are likely to succeed on the merits.**

**A.     ImmDef lacks standing and its claims are outside the INA's "zone of interest."**

First, *Food & Drug Administration v. Alliance for Hippocratic Medicine*, 602 U.S. 367 (2024), forecloses ImmDef from establishing standing. This Court's conclusion that ImmDef's core business activities have remained the same apart from, prior to, and after MPP's implementation and are directly affected by MPP's reinstatement (ECF No. 405 at 12–13) misreads the principles in *Hippocratic Medicine* and *Havens Realty Corp. v. Coleman*, 455 U.S. 363 (1982). In both cases, the Supreme Court analyzed the core activities of the organizations as they existed at the time of the defendants' conduct and determined whether the conduct affected those activities. *See Hippocratic Medicine*, 602 U.S. at 379 (noting that, prior to the defendant's conduct, the plaintiff organization was engaged in providing "counseling and referral services for low-and moderate-income homeseekers," and that the defendant's actions "perceptibly impaired" the organization's ability to provide those services). Accordingly, those activities must have existed before the defendants acted. Here, ImmDef's own evidence shows that it engaged in acts outside of its preexisting core business activities in response to MPP, and that is precisely the type of voluntary activities *Hippocratic Medicine* determined was insufficient to establish standing. *See, e.g.*, ECF No. 261 at 31 (quoting ECF No. 175, Second Amended Complaint ("SAC") ¶ 273) ("In response to Defendants' implementation of the Protocols in January 2019, ImmDef established its Cross Border Initiative ('CBI'), which focuses on providing direct representation, pro se assistance, and advocacy to individuals subjected to MPP."); ECF No. 371-1 at 28 (stating that "in order to represent its clients competently and serve asylum seekers subjected to MPP, ImmDef had to reallocate staff time, expend significant time and financial resources, send its staff to Mexico, and a rent a new office, all at the expense of its core programs"), 17 ("During the first implementation of MPP 1.0, ImmDef faced serious impediments to carrying out its core business activities of

2

(29 of 65), Page 29 of 65    Case: 25-2581, 05/09/2025, DktEntry: 9.1, Page 29 of 65
Case 2:20-cv-09893-JGB-SHK    Document 407    Filed 04/21/25    Page 10 of 22    Page
ID #:7321

representing and providing other types of legal services to noncitizens in and around southern California who were facing removal" because, "[t]o represent asylum seekers forced to remain in Mexico," it conducted "routine travel to Mexico to consult with ImmDef's clients [which] was costly, time-intensive, and detracted from other legal work.").

Second, the Court's conclusion that ImmDef's claims fall within the INA's "zone of interest" because their claims are not so marginally related to or inconsistent with the purpose implicit in the statute such that a suit would be foreclosed (ECF No. 405 at 13-14) renders the "zone of interest" requirement toothless. Nothing in the asylum statute (8 U.S.C. § 1158(a)) suggests that nonprofit organizations aiding individuals subject to MPP (*see* SAC ¶¶ 271, 273) have any cognizable interests of their own in connection with an individual alien's eligibility for asylum. Indeed, § 1158 neither regulates ImmDef's conduct nor creates any benefits for which it is eligible. *See INS v. Legalization Assistance Project*, 510 U.S. 1301, 1302, 1305 (1993) (O'Connor, J., in chambers) (concluding that relevant INA provisions were "clearly meant to protect the interests of undocumented aliens, not the interests" of "organizations that provide legal help to immigrants" and that the fact that a "regulation may affect the way an organization allocates its resources … does not give standing to an entity which is not within the zone of interests the statute meant to protect."). Moreover, this Court's continued reliance on *East Bay Sanctuary Covenant v. Trump*, 932 F.3d 742 (9th Cir. 2018) ("*East Bay I*"), is misplaced, as *East Bay I* never considered 8 U.S.C. § 1252, which manifests Congress's intent to strictly limit challenges to removal-related activity to claims raised by individual aliens in removal proceedings. *See J.E.F.M. v. Lynch*, 837 F.3d 1026, 1031 (9th Cir. 2016) ("Taken together, § 1252(a)(5) and § 1252(b)(9) mean that any issue—whether legal or factual—arising from any removal-related activity can be reviewed only through the PFR process.").

DEFENDANTS' EX PARTE APPLICATION FOR A STAY

(30 of 65), Page 30 of 65    Case: 25-2581, 05/09/2025, DktEntry: 9.1, Page 30 of 65
Case 2:20-cv-09893-JGB-SHK    Document 407    Filed 04/21/25    Page 11 of 22    Page
ID #:7322

**B.     ImmDef's claims are not ripe for judicial review.**

Contrary to the Court's conclusion (ECF No. 405 at 14–15), ImmDef's claims are not ripe. Courts are "reluctant to apply injunctive and declaratory judgment remedies to administrative determinations *unless the effects of the administrative action* challenged *have been felt in a concrete way* by the challenging parties." *United States v. Texas*, 599 U.S. 670, 677 (2023) (cleaned up) (emphases added). This Court found that it did "not require substantial factual development to gauge how the reimplementation of MPP 1.0 will impact ImmDef's core business activities once it begins to take effect," ECF No. 405 at 15–16, but MPP has been reinstated for almost three months now, and ImmDef has not identified any actual or concrete injury. *See Lujan v. Nat'l Wildlife Fed.*, 497 U.S. 871, 891 (1990) (stating that a controversy concerning a regulation is not ordinarily ripe for review under the APA until the regulation has been applied to the claimant's situation by some concrete action). Stated differently, MPP has been in effect but ImmDef has not felt the effects of this administrative action. Importantly, ImmDef has identified *no individuals* who have been subjected to MPP, or pled actual experiences with MPP, after its reinstatement.

**C.     ImmDef's *ex parte* motion is procedurally barred.**

ImmDef's *ex parte* motion remains procedurally barred. This Court's conclusion that the reimplementation of MPP presents a threat of immediate or irreparable injury to the Terminated Case Subclass (ECF No. 405 at 9) overlooks that ImmDef has not identified anyone, let alone a member of the Terminated Case Subclass, who has been subjected to MPP since its reinstatement in January 2025. *See* ECF No. 378 at 11–12. Respectfully, that an individual "could be" subject to MPP is speculative and does not present a threat of immediate or irreparable injury to ImmDef. ECF No. 405 at 9.

**D.     ImmDef's stay request is not justiciable.**

First, 8 U.S.C. § 1252(f)(1) bars jurisdiction to stay an agency action directing how DHS will implement § 1225(b)(2)(C). The Court determined that § 1252(f)(1) did not bar its ability to stay an agency action, in short, because unlike an injunction, a stay

4

(31 of 65), Page 31 of 65       Case: 25-2581, 05/09/2025, DktEntry: 9.1, Page 31 of 65
Case 2:20-cv-09893-JGB-SHK    Document 407    Filed 04/21/25    Page 12 of 22    Page
ID #:7323

"is ultimately not coercive" and merely reinstates the status quo "absent the unlawful agency action" (ECF No. 405 at 16–18). And even if § 705 were to implicate injunctive relief, the Court concluded it could still grant a stay because it found that ImmDef challenged the implementation of the policy, not the statute itself. *Id.* at 18. But the Court is incorrect. The relief the Court granted plainly enjoins and restrains DHS's implementation of 8 U.S.C. § 1225(b)(2)(C). And § 1252(f)(1) explicitly bars such relief. The Supreme Court held—in a case challenging *DHS's implementation of MPP* and § 1225(b)(2)(C)—that § 1252(f)(1) "generally prohibits lower courts from entering injunctions that order federal officials to take or to refrain from taking actions to enforce, implement, or otherwise carry out the specified statutory provisions." *Biden v. Texas*, 597 U.S. 785, 797 (2022) (quoting *Garland v. Aleman Gonzalez*, 596 U.S. 543, 544 (2022)). Section 1225(b)(2)(C) is one of the statutory provisions § 1252(f)(1) covers. Section 1252(f)(1) thus eliminates any court's (other than the Supreme Court's) authority to issue coercive orders enjoining or restraining implementation of § 1225(b)(2)(C).

The instant order, which postpones agency action under § 705, is such a coercive order. It restrains DHS's actions with respect to how it will implement § 1225(b)(2)(C) and is thus analogous to a preliminary injunction, in that, an order under § 705 purports to maintain the status quo pending resolution of the merits. And the instant order "order[s] federal officials to take or *to refrain from taking* actions to enforce, implement, or otherwise carry out the specified statutory provisions." *Texas*, 597 U.S. at 797 (emphasis added); *see* Black's Law Dictionary (10th ed. 2014) (defining injunction as "[a] court order commanding or preventing an action").

Further, § 705 does not create a new form of remedy that is distinct from an injunction. Instead, it preserves traditional equitable relief. *See Scripps-Howard Radio v. FCC*, 316 U.S. 4, 16–17 (1942); ECF No. 378 at 23.

The Court (like ImmDef) relies heavily on *Nken v. Holder*, 556 U.S. 418 (2009), in attempting to distinguish stays from injunctions. *See* ECF Nos. 371-1 at 28 and 405

DEFENDANTS' EX PARTE APPLICATION FOR A STAY

1    at 17 (both quoting *Nken*, 556 U.S. at 428). But, as Defendants have explained (ECF

2    No. 378 at 23–24), *Nken* simply does not apply here. Thus, the instant order is no

3    different from an injunction. And even if the "stay" were not akin to an injunction,

4    § 1252(f) bars not only orders that "enjoin" relevant agency action implementing the

5    INA but also those that "restrain"—which the "stay" sought here plainly does. *See*

6    *Aleman Gonzalez*, 596 U.S. at 544.

7         Second, although the Court's order grants ImmDef's "emergency relief to stay

8    Defendants' reimplementation of MPP" (ECF No. 405 at 8), the order is ambiguous

9    regarding the action the Court is staying: the reimplementation of MPP since January

10   2025, or the 2019 version of MPP and the relevant guidance documents since announced

11   in 2018 (that is, MPP itself). *See* ECF Nos. 378 at 10–12, 405 at 1–4. Insofar as the

12   Court's "reimplementation of MPP" language refers to MPP as DHS reinstated in

13   January 2025, that action is not justiciable because it is not a final agency action (nor a

14   legal directive) capable of being stayed. *See Lujan*, 497 U.S. at 882 ("When, as here,

15   review is sought not pursuant to specific authorization in the substantive statute, but

16   only under the general review provisions of the APA, the 'agency action' in question

17   must be 'final agency action.'"). For an agency's decision to be considered final, (i) the

18   action "must mark the 'consummation' of the agency's decisionmaking process;" and

19   (ii) "the action must be one by which 'rights or obligations have been determined,' or

20   from which 'legal consequences will flow.'" *Bennett v. Spear*, 520 U.S. 154, 177 (1997).

21   Under that standard, the reinstatement of MPP in January 2025 neither marks the

22   consummation of any agency decisionmaking process (the policy is from 2019), nor

23   does it create any substantive rules or rights, nor constitute an action from which legal

24   consequences will flow. Indeed, ImmDef makes no such claims in its *ex parte*

25   application. *See* ECF No. 371-1; *Am. Tort Reform Ass'n v. OSHA*, 738 F.3d 387, 395

26   (D.C. Cir. 2013) ("The APA only provides for judicial review of 'final agency action'

27   and … statements of policy generally do not qualify because they are not finally

28   determinative of the issues or rights to which [they are] addressed.").

DEFENDANTS' EX PARTE APPLICATION FOR A STAY

(33 of 65), Page 33 of 65      Case: 25-2581, 05/09/2025, DktEntry: 9.1, Page 33 of 65
Case 2:20-cv-09893-JGB-SHK    Document 407    Filed 04/21/25    Page 14 of 22    Page
ID #:7325

1    Insofar as the language "reimplementation of MPP" refers to MPP itself, the stay

2    request is not justiciable because ImmDef's claims do not challenge the validity of MPP

3    itself. Instead, the claims challenge DHS's execution of MPP and its effect on ImmDef's

4    business and on the Individual Plaintiffs' ability to apply for asylum and their access to

5    counsel. *See* ECF No. 371-1 at 9–18. Such claims can only be challenged as actually

6    applied. Notably here, ImmDef has not shown any concrete injuries because of MPP

7    itself. *See* ECF No. 399 at 4–9. Moreover, in 2020, the Supreme Court stayed an

8    injunction of MPP itself. *See Wolf v. Innovation L. Lab*, No. 19A960, 140 S. Ct. 1564

9    (Mar. 11, 2020) (mem.); *Innovation Law Lab v. Wolf*, No. 19-15716, 2020 WL 964402

10   (9th Cir. Feb. 28, 2020). Finally, the Court incorrectly determined that it could stay the

11   already-effective MPP policy. *See* ECF No. 378 at 24–26. An order staying a policy

12   after it has already gone into effect thus does not preserve the status quo, but rather,

13   *alters* it. *See, e.g.*, *Ne. Ohio Coal. for Homeless & Serv. Emps. Int'l Union, Loc. 1199

14   v. Blackwell*, 467 F.3d 999, 1006 (6th Cir. 2006) (explaining an order "preventing the

15   implementation of new regulations" would "disturb[]" rather than preserve "the status

16   quo"); *Off. of Pers. Mgmt. v. Am. Fed'n of Gov't Emps., AFL-CIO*, 473 U.S. 1301, 1305

17   (1985) (had the district court issued an order stopping rule from taking effect that would

18   alter the "status quo"). Indeed, the Court's unsupported declaration that the relevant

19   "status quo" was "the state of MPP 1.0 prior to the Reinstatement Announcement—i.e.,

20   effectively terminated although the October 29 Memoranda remain stayed" (ECF No.

21   405 at 19), illustrates the subjective nature of selecting which "status quo" to restore.

22   Notably, an order seeking to preserve the status quo prior to an agency action is in effect

23   no different than an injunction. *See, e.g.*, *RMS NA, Inc. v. RMS (AUS) Pty Ltd*, No.

24   24-CV-01366-AJB-MMP, 2024 WL 4869193, at *2 (S.D. Cal. Oct. 21, 2024)

25   (discussing prohibitory and mandatory injunctions); *accord D&G Holdings, LLC v.

26   Sylvia Mathews Burwell*, 156 F. Supp. 3d 798, 811 (W.D. La. 2016) (movant seeks "a

27   status quo injunction under 5 U.S.C. § 705"); *Sierra Club v. Jackson*, 833 F. Supp. 2d

28   11, 19 (D.D.C. 2012) (similar). Thus, any order to "preserve status or rights," 5 U.S.C.

DEFENDANTS' EX PARTE APPLICATION FOR A STAY

(34 of 65), Page 34 of 65    Case: 25-2581, 05/09/2025, DktEntry: 9.1, Page 34 of 65
Case 2:20-cv-09893-JGB-SHK    Document 407    Filed 04/21/25    Page 15 of 22    Page
ID #:7326

1    § 705, is also an order "enjoin[ing]" or "restrain[ing]" "the operation" of § 1225 that is

2    barred by § 1252(f) for the reasons noted above.

3    Regardless of the label affixed to the instant order, in effect, it counters the court's

4    order in *Texas v. Biden*, 646 F. Supp. 3d 753 (N.D. Tex. 2022), which stayed Secretary

5    Mayorkas's October 29 Memoranda and corresponding decision to terminate MPP

6    pending final resolution of the merits of that case. *See* 646 F. Supp. 3d at 764, 781.

7    Therefore, the instant order highlights the multitude of problems inherent in a court

8    staying agency action already in effect and in issuing such relief on a nationwide basis.

9    Further, there is no APA cause of action here because the Secretary's exercise of

10    authority under § 1225(b)(2)(C)—the basis for MPP—is entirely discretionary. *Texas*,

11    597 U.S. at 802–04. The APA precludes review of "administrative decisions that courts

12    traditionally have regarded as 'committed to agency discretion.'" *Texas v. United States*,

13    809 F.3d 134, 165 (5th Cir. 2015) (quoting *Lincoln v. Vigil*, 508 U.S. 182, 191 (1993));

14    *see* 5 U.S.C. § 701(a)(2); *Arizona v. United States*, 567 U.S. 387, 396 (2012). And

15    Congress provided "no court shall have jurisdiction to review … any other decision or

16    action … the authority for which is specified … to be in the discretion of the …

17    Secretary." 8 U.S.C. § 1252(a)(2)(B)(ii).

18    **E.    MPP does not involve content-based restrictions on speech.**

19    This Court's findings regarding Defendants' alleged limitations on ImmDef's

20    protected speech under the First Amendment (ECF No. 405 at 24) oversells Defendants'

21    ability to control ImmDef's actions. ImmDef bases its claim "not on express restrictions

22    on attorney speech or expressive conduct, but an administrative decision that impacts

23    [its] ability to provide legal services to their clients." *Arroyo v. DHS*, No. SCV 19-815

24    JGB-SHKx, 2019 WL 2912848, at *20 (C.D. Cal. June 20, 2019). But content-neutral

25    restrictions like these "are permissible when they are 'narrowly tailored to serve a

26    significant governmental interest, and … leave open ample alternative channels for

27    communication of the information." *Id.* at *21 (citation omitted). Here, Congress

28    permitted contiguous-territory return. And ImmDef may still provide legal services to

(35 of 65), Page 35 of 65     Case: 25-2581, 05/09/2025, DktEntry: 9.1, Page 35 of 65
Case 2:20-cv-09893-JGB-SHK    Document 407    Filed 04/21/25    Page 16 of 22    Page
ID #:7327

1   existing clients, and communicate with, or advise, potential clients in Mexico. The First

2   Amendment does not give ImmDef the right to speak with existing, let alone potential

3   clients, whenever and wherever it wants. Further, the Court's conclusion that MPP will

4   again impose barriers on ImmDef's ability to consult with clients and potential clients

5   (ECF No. 405 at 21–24) does not account for ImmDef's failure to identify any client

6   subject to MPP since it was reinstated in January 2025.

7   **F.      8 U.S.C. § 1252(a)(5) and (b)(9) bar ImmDef's right-to-counsel and asylum**

8   **claims because they are inextricably linked to removal proceedings.**

9           This Court's finding that "Individual Plaintiffs do not directly challenge the bases

10  for their orders of removal but rather seek to avail themselves of the administrative

11  system that exists to litigate their immigration cases, rendering their claims independent

12  of or collateral to the removal process," (ECF No. 405 at 20–21) impermissibly skirts

13  the jurisdictional bars in 8 U.S.C. § 1252(a)(5) and (b)(9). ImmDef and Individual

14  Plaintiffs bring their claims under the INA provisions affording the rights to counsel

15  and to apply for asylum, accordingly, these rights are limited to the "proceeding[s]

16  brought to remove" the aliens and thus "aris[es] from those proceedings. 8 U.S.C.

17  § 1252(b)(9); *see E.O.H.C. v. Sec'y United States Dep't of Homeland Sec.*, 950 F.3d

18  177, 187 (3d Cir. 2020) (concluding that § 1252(b)(9) barred review of the statutory

19  right-to-counsel claim but not the constitutional one). Moreover, contrary to the Court's

20  finding (ECF No. 405 at 21), no relationship exists between the injury claimed in the

21  *ex parte* application and the SAC. Although the SAC claimed that past decisions

22  continued to cause ongoing injury (ECF No. 405 at 21), ImmDef has not alleged any

23  injuries from December 2021 until January 2025, when MPP was reinstated, to now,

24  nearly three months later. *See* ECF No. 379. Instead, "[s]ince MPP 1.0 ended in the

25  summer of 2021, ImmDef has reprioritized and expanded its legal representation

26  programs for noncitizen children and adults in and around southern California." ECF

27  No. 371-3, ¶ 16. At bottom, ImmDef cannot pursue prospective relief with respect to

28  MPP because its allegations of harm and the certified class it represents are limited to

9

(36 of 65), Page 36 of 65    Case: 25-2581, 05/09/2025, DktEntry: 9.1, Page 36 of 65
Case 2:20-cv-09893-JGB-SHR    Document 407    Filed 04/21/25    Page 17 of 22    Page
ID #:7328

1    individuals subject to MPP before June 2021 and are seeking relief for past harms. And

2    no relationship exists between the injury claimed here versus that claimed in the SAC.

3    **G.    MPP does not violate the INA's right to counsel in removal proceedings.**

4         This Court's conclusion that "the INA mandates that asylum seekers have

5    meaningful access to counsel, including the right to contact counsel and the time, space,

6    and ability to consult with counsel safety and confidentially" (ECF No. 405 at 27)

7    expands the right beyond that afforded by Congress. First, aliens seeking admission

8    have only those rights that "Congress has provided by statute." *DHS v. Thuraissigiam*,

9    591 U.S. 103, 140 (2020). And in § 1229a removal proceedings, Congress gave aliens

10   the "privilege of being represented, at no expense to the Government, by counsel of the

11   alien's choosing who is authorized to practice in such proceedings[.]" 8 U.S.C.

12   § 1229a(b)(4)(A); *see* 8 U.S.C. §§ 1158(d)(1), 1362. As the "authorized to practice"

13   requirement shows, that statutory right only extends to proceedings conducted by

14   immigration judges under § 1229a removal proceedings in the United States. 8 U.S.C.

15   §§ 1158(d)(1), 1229a(b)(4)(A), 1362; *see Orozco-Lopez v. Garland*, 11 F.4th 764, 778–

16   79 (9th Cir. 2021). Second, MPP does not "force[] aliens to remain in Mexico pending

17   their removal proceedings; the INA expressly authorizes contiguous-territory return.

18   Accordingly, the decision to exercise that authority cannot give rise to an APA suit for

19   violating a separate statutory provision regarding counsel.

20   **H.    MPP does not violate the INA's right to apply for asylum.**

21        The Court's finding that 8 U.S.C. § 1225(b)(2)(C) does not "mention asylum at

22   all" (ECF No. 405 at 23) fails to consider the statutory language "pending a proceeding

23   under section 1229a of this title," which is removal proceedings wherein aliens apply

24   for asylum. *See generally* 8 U.S.C. § 1229a. Accordingly, it was *Congress* that

25   determined that aliens arriving on land from Mexico can be permitted to await removal

26   proceedings while in Mexico (which includes the adjudication of their asylum

27   applications during such proceedings), irrespective of any alleged difficulties that such

28   returns might pose for the aliens or their lawyers. Indeed, because the INA explicitly

10

(37 of 65), Page 37 of 65        Case: 25-2581, 05/09/2025, DktEntry: 9.1, Page 37 of 65
Case 2:20-cv-09893-JGB-SHR    Document 407    Filed 04/21/25    Page 18 of 22    Page
ID #:7329

permits expulsion to contiguous countries during the pendency of removal hearings, ImmDef cannot establish a violation of the INA. Moreover, ImmDef, an organization, is not applying for asylum (it cannot); it seeks to help others do so. And the gravamen of its claim is that individual Plaintiffs were (and, thus, will be) deprived of *meaningful access* to apply for asylum—not the *inability* to apply for asylum. ECF No. 371-1 at 21–24. But, again, aliens seeking admission to the U.S. have only those rights that "Congress has provided by statute." *Thuraissigiam*, 591 U.S. at 140 (citation omitted). Congress permitted asylum applications, but also permitted contiguous-territory return. And the factual allegations in the SAC show that individual Plaintiffs were indeed able to exercise this right by *applying for* asylum. *See* SAC at 41–70.

**II.    The balance of harm strongly favors a stay.**

**A.    The Court's injunction irreparably harms the Government and the public (factors 3 and 4).**

The Court's order staying the reimplementation of MPP necessarily imposes irreparable harm on the government and the public. The government "suffers a form of irreparable injury" "[a]ny time [it] is enjoined by a court from effectuating statutes enacted by representatives of its people." *Maryland v. King*, 567 U.S. 1301, 1303 (2012) (Roberts, C.J., in chambers) (citation omitted). That is particularly true here because rules governing immigration "implement[] an inherent executive power." *United States ex rel. Knauff v. Shaughnessy*, 338 U.S. 537, 542 (1950) ("[I]t is not within the province of any court, unless expressly authorized by law, to review the determination of the political branch of the Government to exclude a given alien"). Indeed, a stay of MPP's reimplementation "is not merely an erroneous adjudication of a lawsuit between private litigants, but an improper intrusion by a federal court into the workings of a coordinate branch of the Government." *INS v. Legalization Assist. Project*, 510 U.S. 1301, 1305-06 (1993) (O'Connor, J., in chambers) (granting a stay).

Here, the Court asserted that "'broad relief is appropriate to ensure uniformity and consistency in enforcement'" (ECF No. 405 at 31 (quoting *E. Bay Sanctuary*

11

(38 of 65), Page 38 of 65      Case: 25-2581, 05/09/2025, DktEntry: 9.1, Page 38 of 65
Case 2:20-cv-09893-JGB-SHK      Document 407      Filed 04/21/25      Page 19 of 22      Page
ID #:7330

1    *Covenant v. Biden*, 993 F.3d 640, 681 (9th Cir. 2021)). But "[a]ny remedy a judge

2    authorizes must not be 'more burdensome [to the defendant] than necessary to redress

3    the complaining parties.'" *United States v. Texas*, 599 U.S. 670, 702 (2023) (Gorsuch,

4    J., concurring) (quoting *Califano v. Yamasaki*, 442 U. S. 682, 702 (1979)). "And faithful

5    application of those principles suggests that an extraordinary remedy like vacatur would

6    demand truly extraordinary circumstances to justify it. *Cf. S. Bray & P. Miller, Getting*

7    *Into Equity*, 97 N. D. L. Rev. 1763, 1797 (2022) ("[I]n equity it all connects—the

8    broader and deeper the remedy the plaintiff wants, the stronger the plaintiff 's story

9    needs to be.")." *Texas*, 599 U.S. at 702 (Gorsuch, J., concurring). Such extraordinary

10   circumstances are flatly absent from this case.

11       The relief the Court granted was overbroad. In purporting to set nationwide

12   policy, the Court disregarded Ninth Circuit precedent directing it to limit relief to

13   "redress only the injury shown as to [Plaintiffs]." *California v. Azar*, 911 F.3d 558, 584

14   (9th Cir. 2018). Such overbroad relief allows "one district court [to] make a binding

15   judgment for the entire country." *Louisiana v. Becerra*, 20 F.4th 260, 263 (5th Cir.

16   2021). *See Labrador v. Poe*, 144 S. Ct. 921, 927 (2024) (Gorsuch, J., concurring)

17   ("[T]he … universal injunction effectively transformed a limited dispute between a

18   small number of parties focused on one feature of a law into a far more consequential

19   referendum on the law's every provision as applied to anyone."). A "lack of percolation

20   has serious consequences for judicial decisionmaking." *Ramos v. Wolf*, 975 F.3d. 872,

21   903–04 (9th Cir. 2020) (Nelson, J., concurring). Accordingly, at the very least, the Court

22   should stay the nationwide scope of its § 705 stay.

23       Notably, the Supreme Court has granted oral argument on the issue of whether

24   nationwide relief is permissible. *See Trump, President of the U.S., et al. v. CASA, Inc.,*

25   *et al.*, 604 U.S. __ (Order) (Apr. 17, 2025); *Trump, President of the U.S., et al. v.*

26   *Washington, et al.*, 604 U.S. __ (Order) (Apr. 17, 2025); *Trump, President of the U.S.,*

27   *et al. v. New Jersey, et al.*, 604 U.S. __ (Order) (Apr. 17, 2025). Thus, a stay of the

28   nationwide relief granted in this case is warranted.

DEFENDANTS' EX PARTE APPLICATION FOR A STAY

(39 of 65), Page 39 of 65    Case: 25-2581, 05/09/2025, DktEntry: 9.1, Page 39 of 65
Case 2:20-cv-09893-JGB-SHK    Document 407    Filed 04/21/25    Page 20 of 22    Page
ID #:7331

**B.    A stay pending appeal will not substantially harm ImmDef (factor 2).**

ImmDef has not alleged any current examples of individuals impacted by MPP. *See generally* Transcript of Proceedings, Case No. 2:20-cv-09893-JGB-SHK, March 31, 2025 ("Tr.") at 25–26; *see* ECF No. 371-1. ImmDef has only offered inadmissible and speculative statements that they believe that they will encounter potential clients impacted by MPP in the future, and therefore, be harmed in the future. *See* Tr. at 25:12–17 ("And so in this posture, it's this threat of imminent harm because at any moment, right? The 2019 protocols are live, in effect. They just have not been—and no one has been enrolled in them yet—or, I guess a couple of people. But at any moment that harm will materialize for ImmDef."). Instead, the injury alleged by ImmDef either stems from the past, *see* ECF No. 371-1 n.21 (discussing how ImmDef had established standing because it "has *shown* injury" previously) (emphasis added), and otherwise simply speculates as to a future injury, Tr. at 25:12–17 (ImmDef discussing how MPP is "live" and therefore, there is a "threat of imminent harm[.]"). Therefore, a stay would not substantially injure ImmDef.

In sum, challenges to DHS's discretion on how best to enforce immigration law "invade a special province of the Executive." *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 489 (1999). Thus, the Court's stay of MPP will cause direct, irreparable injury to the interests of the government and the public. *See Nken*, 556 U.S. at 435. As explained, Defendants have shown they will prevail on the merits of their claims and ImmDef cannot show a stay of the order will substantially injure it. The balance of equities clearly favors Defendants, and the Court should grant Defendants' *ex parte* stay application.

DEFENDANTS' EX PARTE APPLICATION FOR A STAY

(40 of 65), Page 40 of 65     Case: 25-2581, 05/09/2025, DktEntry: 9.1, Page 40 of 65
Case 2:20-cv-09893-JGB-SHR     Document 407     Filed 04/21/25     Page 21 of 22     Page
ID #:7332

## CONCLUSION

For the foregoing reasons, this Court should grant a stay pending appeal. Alternatively, the Court should grant a stay pending Defendants' filing a motion for stay with the Ninth Circuit. If the Court declines to do either, it should narrow the scope of its order to the specific harm allegedly shown.

Dated: April 21, 2025

BILAL A. ESSAYLI
United States Attorney

DAVID M. HARRIS
Assistant United States Attorney
Chief, Civil Division

JOANNE S. OSINOFF
Assistant United States Attorney
Chief, Complex and Defensive
Litigation Section

CHRISTINA MARQUEZ
(Cal. Bar No. 305301)
JASON K. AXE
(Cal. Bar No. 187101)
Assistant United States Attorneys
Federal Building, Suite 7516
300 North Los Angeles Street
Los Angeles, California 90012
Telephone: (213) 894-8790
Facsimile: (213) 894-7819
E-mail: Jason.Axe@usdoj.gov

Respectfully submitted,

YAAKOV M. ROTH
Acting Assistant Attorney General
Civil Division

DREW C. ENSIGN
Deputy Assistant Attorney General

BRIAN C. WARD
CATHERINE M. RENO
CARA E. ALSTERBERG
(Cal. Bar No. 319326)
Senior Litigation Counsel

MICHAEL D. ROSS
Trial Attorney

*/s/ Alanna T. Duong*
ALANNA T. DUONG
(AZ Bar No. 031641)
Senior Litigation Counsel
Office of Immigration Litigation
General Litigation and Appeals Section
Civil Division, Department of Justice
P.O. Box 878, Ben Franklin Station
Washington, D.C. 20044
Tel: (202) 305-7040
Fax: (202) 305-7000
alanna.duong@usdoj.gov

*Attorneys for the Defendants*

DEFENDANTS' EX PARTE APPLICATION FOR A STAY

(41 of 65), Page 41 of 65          Case: 25-2581, 05/09/2025, DktEntry: 9.1, Page 41 of 65
Case 2:20-cv-09893-JGB-SHK    Document 407    Filed 04/21/25    Page 22 of 22    Page
ID #:7333

1

## <u>LOCAL RULE 11-6.2 CERTIFICATE OF COMPLIANCE</u>

2      The undersigned, counsel of record for Defendants, certifies that this

3 memorandum of points and authorities does not exceed 25 pages, which complies with

4 this Court's Standing Order. ECF No. 114.

5

6  Dated:  April 21, 2025               */s/ Alanna T. Duong*
                                        ALANNA T. DUONG
7                                       Senior Litigation Counsel
                                        U.S. Department of Justice

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT B

(43 of 65), Page 43 of 65     Case: 25-2581, 05/09/2025, DktEntry: 9.1, Page 43 of 65
Case 2:20-cv-09893-JGB-SHK    Document 409    Filed 04/23/25    Page 1 of 23    Page ID
#:7341

1   MATTHEW T. HEARTNEY (SBN 123516)
    Matthew.Heartney@arnoldporter.com
2   ARNOLD & PORTER KAYE SCHOLER LLP
    777 South Figueroa Street, 44th Floor
3   Los Angeles, CA 90017-5844
    Tel: (213) 243-4000 / Fax: (213) 243-4199
4

5   MELISSA CROW*                      SIRINE SHEBAYA*
    crowmelissa@uclawsf.edu            sirine@nipnlg.org
6   CENTER FOR GENDER &                NATIONAL IMMIGRATION PROJECT
      REFUGEE STUDIES                    OF THE NATIONAL LAWYERS GUILD
7   1121 14th Street, NW, Suite 200    1201 Connecticut Ave. NW, Suite 531
    Washington, D.C. 20005             #896645
8   Tel: (202) 355-4471                Washington, D.C. 20036
    Fax: (415) 881-8824                Tel: (617) 227-9727
9                                      Fax: (617) 227-5495

10  STEPHEN W. MANNING*                EFREN C. OLIVARES*
    stephen@innovationlawlab.org       Efren.Olivares@splcenter.org
11  INNOVATION LAW LAB                 SOUTHERN POVERTY LAW CENTER
    333 SW 5th Ave, Suite 200          150 E. Ponce de Leon Ave., Suite 340
12  Portland, OR 97204                 Decatur, GA 30030
    Tel: (503) 922-3042                Tel: (404) 821-6443
13  Fax: (503) 882-0281                Fax: (877) 349-7039

14

15  *Attorneys for Plaintiffs (continued on next page)*

16              **UNITED STATES DISTRICT COURT**

17        **CENTRAL DISTRICT OF CALIFORNIA - EASTERN DIVISION**

18

| 19 | IMMIGRANT DEFENDERS LAW CENTER, *et al.*, | Case No. 2:20-cv-09893-JGB-SHK |
|---|---|---|
| 20 | | |
| 21 | Plaintiffs, | **PLAINTIFF IMMIGRANT DEFENDERS LAW CENTER'S OPPOSITION TO DEFENDANTS' *EX PARTE* APPLICATION TO STAY THE STAY OF AGENCY ACTION UNDER 5 U.S.C. § 705** |
| 22 | v. | |
| 23 | KRISTI NOEM, *et al.*, | |
| 24 | Defendants. | |
| 25 | | Judge:   Honorable Jesus G. Bernal |
|    | | Crtrm:   1 |
| 26 | | |
| 27 | | Action Filed:   October 28, 2020 |
| 28 | | |

(44 of 65), Page 44 of 65    Case: 25-2581, 05/09/2025, DktEntry: 9.1, Page 44 of 65
Case 2:20-cv-09893-JGB-SHK    Document 409    Filed 04/23/25    Page 2 of 23    Page ID
#:7342

1

*[Caption Page Continued - Additional Attorneys for Plaintiffs]*

2

ANNE DUTTON (SBN 340648)
duttonanne@uclawsf.edu
CENTER FOR GENDER &
  REFUGEE STUDIES
200 McAllister Street
San Francisco, CA 94102
Tel: (415) 581-8825
Fax: (415) 581-8824


JORDAN CUNNINGS*
jordan@innovationlawlab.org
KELSEY PROVO*
kelsey@innovationlawlab.org
TESS HELLGREN*
tess@innovationlawlab.org
ROSA SAAVEDRA
VANACORE*
rosa@innovationlawlab.org
INNOVATION LAW LAB
333 SW 5th Avenue, Suite 200
Portland, OR 97204
Tel: (503) 922-3042 /
Fax: (503) 882-0281

KATHLEEN X. WENG*
Katie.Weng@arnoldporter.com
ARNOLD & PORTER KAYE
  SCHOLER LLP
601 Massachusetts Avenue, N.W.
Washington, D.C. 20001
Tel: (202) 942-5000
Fax: (202) 942-5999

MATTHEW VOGEL*†
matt@nipnlg.org
STEPHANIE M. ALVAREZ-JONES* **
stephanie@nipnlg.org
VICTORIA F. NEILSON*↓
victoria@nipnlg.org
NATIONAL IMMIGRATION PROJECT
  OF THE NATIONAL LAWYERS GUILD
1763 Columbia Road NW
Ste 175 #896645
Washington, DC 20009
Tel: (617) 227-9727
Fax: (617) 227-5495


HANNAH R. COLEMAN (SBN 327875)
Hannah.Coleman@arnoldporter.com
DANIEL S. SHIMELL (SBN 300931)
Daniel.Shimell@arnoldporter.com
ALLYSON C. MYERS (SBN 342038)
Ally.Myers@arnoldporter.com
ARNOLD & PORTER KAYE
  SCHOLER LLP
777 South Figueroa Street, 44th Floor
Los Angeles, CA 90017-5844
Tel: (213) 243-4000
Fax: (213) 243-4199

* admitted Pro Hac Vice
** not admitted in DC; working remotely from and admitted in Georgia only
† not admitted in DC; working remotely from and admitted in Louisiana only
↓ not admitted in DC; working remotely from and admitted in New York only

(45 of 65), Page 45 of 65    Case: 25-2581, 05/09/2025, DktEntry: 9.1, Page 45 of 65
Case 2:20-cv-09893-JGB-SHK    Document 409    Filed 04/23/25    Page 3 of 23    Page ID
#:7343

## **TABLE OF CONTENTS**

INTRODUCTION ..................................................................................................1

LEGAL STANDARD............................................................................................1

ARGUMENT ........................................................................................................2

    I.     DEFENDANTS HAVE NOT MADE A STRONG SHOWING
         THAT THEY ARE LIKELY TO SUCCEED ON THE
         MERITS. ...............................................................................................2

         A.    ImmDef has standing and is within the INA's "zone of
              interest." ...................................................................................2

         B.    ImmDef's claims are ripe for judicial review................................4

         C.    The Court's Order is not procedurally barred. ............................5

         D.    The Court's Order properly found ImmDef's stay request
              to be justiciable. ......................................................................6

         E.    MPP infringes on ImmDef's protected speech............................9

         F.    The Court has jurisdiction to consider Plaintiff's claims. ..............9

         G.    MPP 1.0 violates the right to counsel codified in the INA...........10

         H.    MPP 1.0 violates the INA's right to apply for asylum. ...............10

    II.    THE BALANCE OF HARMS STRONGLY FAVORS
         LEAVING THE COURT'S ORDER IN PLACE ..................................11

         A.    ImmDef will be irreparably harmed by a stay of the
              Court's order. .........................................................................11

         B.    Defendants will not be irreparably harmed absent a stay.............11

         C.    A stay of the Court's Order will injure other interested
              parties. ....................................................................................13

          D.    The public interest favors a continued stay of the
              reimplementation of MPP 1.0...................................................13

         E.    The scope of the stay should not be narrowed............................14

CONCLUSION....................................................................................................14

(46 of 65), Page 46 of 65   Case: 25-2581, 05/09/2025, DktEntry: 9.1, Page 46 of 65
Case 2:20-cv-09893-JGB-SHK   Document 409   Filed 04/23/25   Page 4 of 23   Page ID
#:7344

# **TABLE OF AUTHORITIES**

**Page(s)**

## **Cases**

*Al Otro Lado, Inc. v. Nielsen*,
   327 F. Supp. 3d 1284 (S.D. Cal. 2018) ....................................................... 3, 4

*Am. Tort Reform Ass'n v. OSHA*,
   738 F.3d 387 (D.C. Cir. 2013) ..................................................................... 7

*Aracely, R. v. Nielsen*,
   319 F. Supp. 3d 110 (D.D.C. 2018) ............................................................ 7

*Bennett v. Spear*,
   520 U.S. 154 (1997) ..................................................................................... 6

*Biden v. Texas*,
   597 U.S. 785 (2022) ..................................................................................... 6

*Boardman v. Pac. Seafood Grp.*,
   822 F.3d 1011 (9th Cir. 2016) ............................................................. 5, 8, 11

*Chhoeun v. Marin*,
   306 F. Supp. 3d 1147 (C.D. Cal. 2018) .................................................... 10

*E. Bay Sanctuary Covenant v. Biden*,
   993 F.3d 640 (9th Cir. 2021) ...................................................................... 14

*East Bay Sanctuary Covenant v. Trump*,
   932 F.3d 742 (9th Cir. 2018) ............................................................... 4, 11

*Food & Drug Admin. v. All. for Hippocratic Med.*,
   602 U.S. 367 (2024) ..................................................................................... 3

*Fraihat v. U.S. Immigr. & Customs Enf't*,
   No. 19-1546 JGB, 2020 WL 6540441 (C.D. Cal. Oct. 30, 2020) ............... 1

*Havens Realty Corp. v. Coleman*,
   455 U.S. 363 (1982) ..................................................................................... 3

*Hernandez v. Sessions*,
   872 F.3d 976 (9th Cir. 2017) ...................................................................... 13

(47 of 65), Page 47 of 65    Case: 25-2581, 05/09/2025, DktEntry: 9.1, Page 47 of 65
Case 2:20-cv-09893-JGB-SHK    Document 409    Filed 04/23/25    Page 5 of 23    Page ID
#:7345

*Huisha-Huisha v. Mayorkas*,
    27 F.4th 718 (D.C. Cir. 2022)......................................................................13

*INS v. Legalization Assistance Project of L.A. County*,
    510 U.S. 1301 (1993)....................................................................................4

*Las Americas Immigrant Advoc. Ctr. v. Trump*,
    475 F. Supp. 3d 1194 (D. Or. 2020)..............................................................9

*Leiva-Perez v. Holder*,
    640 F.3d 962 (9th Cir. 2011) ........................................................................1

*Lujan v. Defs. of Wildlife*,
    504 U.S. 555 (1992)....................................................................................12

*Maryland v. King*,
    567 U.S. 1301 (2012)..................................................................................12

*Municipality of Anchorage v. United States*,
    980 F.2d 1320 (9th Cir. 1992) ......................................................................5

*Nat'l TPS All. v. Noem*,
    --- F. Supp. 3d ---, 2025 WL 957677 (N.D. Cal. Mar. 31, 2025)..........6, 14

*Nken v. Holder*,
    556 U.S. 418 (2009)......................................................................1, 2, 6, 13

*O'Shea v. Littleton*,
    414 U.S. 488 (1974)....................................................................................11

*ONRC Action v. Bureau of Land Mgmt.*,
    150 F.3d 1132 (9th Cir. 1998) ......................................................................6

*Orantes-Hernandez v. Thornburgh*,
    919 F.2d 549 (9th Cir. 1990) ......................................................................10

*Pacific Radiation Oncology, LLC v. Queen's Medical Center*,
    810 F.3d 631 (9th Cir. 2015) ................................................................10, 12

*Reno v. Am.-Arab Anti-Discrimination Comm.*,
    525 U.S. 471 (1999)......................................................................................6

*Sec. & Exch. Comm'n v. Jarkesy*,
    603 U.S. 109 (2024)....................................................................................12

- iii -

(48 of 65), Page 48 of 65    Case: 25-2581, 05/09/2025, DktEntry: 9.1, Page 48 of 65
Case 2:20-cv-09893-JGB-SHK    Document 409    Filed 04/23/25    Page 6 of 23    Page ID
#:7346

*Stavrianoudakis v. U.S. Fish & Wildlife Serv.*,
  108 F.4th 1128 (9th Cir. 2024) ................................................................. 4

*Texas v. Biden*,
  646 F. Supp. 3d 753 (N.D. Tex. 2022) ............................................. 8, 14

*United States v. Midwest Oil Co.*,
  236 U.S. 459 (1915) ..................................................................................... 8

*Util. Air Regulatory Grp. v. E.P.A.*,
  573 U.S. 302 (2014) ..................................................................................... 8

*Wagafe v. Trump*,
  No. C17-0094-RAJ, 2017 WL 2671254 (W.D. Wash. June 21, 2017) .................... 7

*West Virginia v. E.P.A.*,
  577 U.S. 1126 (2016) ................................................................................... 8

*Youngstown Sheet & Tube Co. v. Sawyer*,
  343 U.S. 579 (1952) ................................................................................... 12

**Statutes**

5 U.S.C. § 705 ...........................................................................................*passim*

8 U.S.C. § 235(b)(2)(C) ................................................................................... 6

8 U.S.C. § 1158(a)(1) ..................................................................................... 11

8 U.S.C. § 1225(b)(2)(C) ....................................................................... 8, 10, 12

8 U.S.C. § 1229 ............................................................................................. 10

8 U.S.C. § 1252(a)(5) ..................................................................................... 9

8 U.S.C. § 1252(b)(9) ..................................................................................... 9

8 U.S.C. § 1252(f)(1) ................................................................................... 4, 6

PLAINTIFF IMMIGRANT DEFENDERS LAW CENTER'S OPPOSITION TO DEFENDANTS' *EX PARTE*
APPLICATION TO STAY THE STAY OF AGENCY ACTION UNDER 5 U.S.C. § 705

(49 of 65), Page 49 of 65    Case: 25-2581, 05/09/2025, DktEntry: 9.1, Page 49 of 65
Case 2:20-cv-09893-JGB-SHK    Document 409    Filed 04/23/25    Page 7 of 23    Page ID
#:7347

## INTRODUCTION

Defendants have asked the Court to stay its Order granting Plaintiff Immigrant Defender Law Center's ("ImmDef") Application for a Stay of Agency Action Under 5 U.S.C. § 705 (the "Order"). ECF Nos. 407, 405. For the reasons set forth below and in the Court's detailed Order, ECF No. 405, the Court should deny Defendants' application.

## LEGAL STANDARD

In deciding whether to issue a stay pending appeal, courts consider four factors that substantially overlap with the factors for a preliminary injunction: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Nken v. Holder*, 556 U.S. 418, 434 (2009) (citation omitted). "The party seeking a stay 'bears the burden of showing that the circumstances justify an exercise of that discretion.'" *Fraihat v. U.S. Immigr. & Customs Enf't*, No. 19-1546 JGB (SHKX), 2020 WL 6540441, at *2 (C.D. Cal. Oct. 30, 2020) (quoting *Nken*, 556 U.S. at 433–34).

The first two factors are "the most critical." *Nken*, 556 U.S. at 434. Indeed, "stays must be denied to all petitioners who d[o] not meet the applicable irreparable harm threshold, regardless of their showing on the other stay factors." *Fraihat*, 2020 WL 6540441, at *1 (quoting *Leiva-Perez v. Holder*, 640 F.3d 962, 965 (9th Cir. 2011)). To make a strong showing of the likelihood of success on the merits, it is not sufficient to show that the chance of success on the merits is "better than negligible" or that some "possibility of irreparable injury." *Nken*, 556 U.S. at 434 (internal quotation marks and citations omitted). "Once an applicant satisfies the first two factors, the traditional stay inquiry calls for assessing the harm to the opposing party and weighing the public interest." *Id.* at 435.

(50 of 65), Page 50 of 65      Case: 25-2581, 05/09/2025, DktEntry: 9.1, Page 50 of 65
Case 2:20-cv-09893-JGB-SHK    Document 409    Filed 04/23/25    Page 8 of 23    Page ID
#:7348

1    As explained below, Defendants have not made the required "strong showing" of

2    a likelihood of success on the merits. *Nken*, 556 U.S. at 434. Instead, they reiterate

3    arguments that this Court has repeatedly rejected. The Court should do so once more.

4    Nor have Defendants demonstrated that the balance of harms favors a stay of the

5    Court's Order pending appeal. Defendants have failed to demonstrate they are likely to

6    suffer irreparable harm in the absence of a stay. Thus, the balance of harms strongly

7    favors leaving the Court's order in place, as ImmDef has demonstrated—and this Court

8    has confirmed—that ImmDef would suffer further an "immediate threatened injury" if

9    Defendants are permitted to reimplement the 2019 Migrant Protection Protocols policy

10   ("MPP 1.0"). *See* ECF No. 405 at 29, 31 ("As such, the balance of equities and public

11   interest factors tip sharply in ImmDef's favor.").

## ARGUMENT

## I.    DEFENDANTS HAVE NOT MADE A STRONG SHOWING THAT THEY ARE LIKELY TO SUCCEED ON THE MERITS.

### A. ImmDef has standing and is within the INA's "zone of interest."

15   Defendants are incorrect that this Court "misreads the principles in *Hippocratic*

16   *Medicine* and *Havens Realty Corp.*" ECF No. 407 at 2. The Court correctly considered

17   and applied the organizational standing principles consistently established by these

18   precedents, which squarely support its conclusion that "ImmDef has organizational

19   standing to challenge MPP." ECF No. 405 at 13.

20   ImmDef has shown that Defendants' prior implementation of MPP 1.0 impacted

21   the organization's already-existing core activities in critical ways, and that MPP's

22   reimplementation would have the same effect. ImmDef's core business activities

23   consist of providing direct representation, counseling, and legal assistance to

24   noncitizens in removal proceedings in and around southern California, with the goal of

25   providing universal representation. *See* ECF No. 379 (Pltfs' Reply ISO App. to Stay) at

26   1–3; ECF No. 200-1 (SAC) ¶¶ 24, 271–72; ECF No. 371-3, Toczylowski Decl. ¶¶ 2, 5

27   ("Toczylowski Decl."); ECF No. 371-4, Cargioli Decl. ¶¶ 3, 16 ("Cargioli Decl."); ECF

28   No. 405 at 12. ImmDef has alleged "concrete and demonstrable injury" to these core

- 2 -

(51 of 65), Page 51 of 65          Case: 25-2581, 05/09/2025, DktEntry: 9.1, Page 51 of 65
Case 2:20-cv-09893-JGB-SHK    Document 409    Filed 04/23/25    Page 9 of 23    Page ID
#:7349

1    activities, "which remain the same apart from, prior to, and after MPP's

2    implementation." ECF No. 405 at 12–13; *see also* Toczylowski Decl. ¶¶ 21–25

3    (describing how, because of MPP, ImmDef must hire additional staff, engage in cross-

4    border travel, purchase international phone plans, and rent confidential meeting spaces

5    in Mexico); Cargioli Decl. ¶¶ 16–18 (same); SAC ¶¶ 24, 271–72. ImmDef is thus

6    similarly situated to the organization that established standing in *Havens*, where the

7    defendants' racially discriminatory steering practices "directly affected and interfered

8    with" the plaintiff's "core business activities," *Food & Drug Admin. v. All. for

9    Hippocratic Med.*, 602 U.S. 367, 395 (2024), of facilitating "equal access to housing

10   through counseling and other referral services," *Havens Realty Corp. v. Coleman*, 455

11   U.S. 363, 379 (1982); *see also* ECF No. 405 at 12.

12        Defendants' argument that ImmDef has engaged in "voluntary activities" in

13   response to the implementation of MPP 1.0, ECF No. 407 at 2, flatly contradicts this

14   Court's finding that "the expenditures ImmDef undertook [in response to MPP] were

15   necessary and not voluntary," ECF No. 405 at 13. Defendants ignore ample record

16   evidence of how Defendants' past unlawful actions have caused a "concrete and

17   demonstrable injury" to ImmDef's core activities, *Havens*, 455 U.S. at 379, which are

18   far more extensive than the "issue-advocacy" work that was insufficient for standing in

19   *Hippocratic Medicine*, 602 U.S. at 395. *See, e.g.*, Toczylowski Decl. ¶¶ 8–15; Cargioli

20   Decl. ¶¶ 7–13; SAC ¶¶ 273–83 ("[R]epresenting individuals subjected to MPP is

21   different and much more time- and resource-intensive than providing representation in

22   removal proceedings to detained and non-detained individuals inside the U.S., where

23   their lives are not constantly at risk.").

24        Defendants' repeated attempts to challenge the Court's zone-of-interests holding

25   is also without merit. *See* ECF No. 407 at 3. This Court has twice correctly affirmed

26   that ImmDef's interests "easily" fall within the zone of interests protected by the INA.

27   *See* ECF No. 405 at 14; ECF No. 261 at 33; *see also Al Otro Lado, Inc. v. Nielsen*, 327

28

- 3 -

(52 of 65), Page 52 of 65        Case: 25-2581, 05/09/2025, DktEntry: 9.1, Page 52 of 65
Case 2:20-cv-09893-JGB-SHK    Document 409    Filed 04/23/25    Page 10 of 23    Page
ID #:7350

1  F. Supp. 3d 1284, 1300–02 (S.D. Cal. 2018).[1] Defendants again seek to distinguish the

2  zone of interests holding in *East Bay Sanctuary Covenant v. Trump*, 932 F.3d 742 (9th

3  Cir. 2018) ("*EBSC I*"). ECF No. 407 at 3. But as this Court observed, in *EBSC I*, the

4  court "squarely rejected a nearly identical argument to the one made by Defendants

5  here." ECF No. 405 at 14. Moreover, as 8 U.S.C. § 1252(f)(1) and other jurisdiction-

6  stripping provisions do not apply, they have "no bearing on whether ImmDef's claims

7  fall within the INA's 'zone of interest.'" *Id.*

8  ### B. ImmDef's claims are ripe for judicial review.

9  As Defendants acknowledge, this Court addressed ripeness in its Order and

10 concluded that ImmDef's claims are ripe for review. ECF No. 405 at 14–16. In a futile

11 attempt to argue otherwise, Defendants restate arguments this Court has already

12 considered and rejected based on detailed analysis.

13 Ripeness requires consideration of both constitutional and prudential factors.

14 "Constitutional ripeness overlaps with the injury-in-fact element of Article III

15 standing," meaning the inquiry is "largely the same." *Id.* at 15 (citations omitted). The

16 Court found an imminent threat to ImmDef's concrete interest "because MPP 1.0—with

17 the same operative guidance as the 2019 policy—is in effect." *Id.* at 13. Since ImmDef

18 "sufficiently allege[s] an injury in fact," the Court correctly concluded that

19 constitutional ripeness is satisfied. *Id.* at 15 (citing *Stavrianoudakis v. U.S. Fish &*

20 *Wildlife Serv.*, 108 F.4th 1128, 1139 (9th Cir. 2024)).

21

22

---

23 [1] Defendants' repeated reliance on *INS v. Legalization Assistance Project of L.A.

24 County*, 510 U.S. 1301 (1993) (O'Connor, J., in chambers), is unpersuasive. ECF No.
407 at 3, 11; ECF No. 378 at 9; ECF No. 189 at 21. As Plaintiffs previously explained,

25 "the Ninth Circuit has characterized that opinion as 'not only . . . non-binding and
concededly 'speculative,' . . . but the interest asserted by the organization in that case—

26 conserving organizational resources to better serve *non*immigrants—is markedly
different from the interest in aiding immigrants alleged here." ECF No. 207 at 21

27 (quoting *EBSC I*, 932 F.3d at 769 n.10). That opinion also involves an analysis of the
Immigration Reform and Control Act, not the INA. *Accord Al Otro Lado*, 327 F. Supp.

28 3d at 1300 (finding this distinction "important").

PLAINTIFF IMMIGRANT DEFENDERS LAW CENTER'S OPPOSITION TO DEFENDANTS' *EX PARTE*
APPLICATION TO STAY THE STAY OF AGENCY ACTION UNDER 5 U.S.C. § 705

(53 of 65), Page 53 of 65    Case: 25-2581, 05/09/2025, DktEntry: 9.1, Page 53 of 65
Case 2:20-cv-09893-JGB-SHR    Document 409    Filed 04/23/25    Page 11 of 23    Page
ID #:7351

1   ImmDef's claims also satisfy the requirements for prudential ripeness. As the

2 Court explained, "[o]nce a court has found that constitutional ripeness is satisfied, the

3 prudential ripeness bar is minimal." ECF No. 405 at 15. The Court held that ImmDef's

4 claims clear this minimal bar, as they are fit for judicial review, and ImmDef has "easily

5 met" the hardship requirement. *Id.* at 16.

6   Here, the Court did "not require substantial factual development to gauge how

7 the reimplementation of MPP 1.0 will impact ImmDef's core business activities once it

8 begins to take effect." ECF No. 405 at 15–16. Although ImmDef has not yet identified

9 any individuals in its service area who have been subjected to MPP since its

10 reinstatement, *see* ECF No. 407 at 4, the record provides ample support for the Court's

11 conclusion that "Defendants' reimplementation of MPP will cause ImmDef . . .

12 irreparable harm," including "undermining its core business activities." ECF No. 405 at

13 30; *see also, e.g.*, *id.* at 29 (finding that Defendants' own statements "'demonstrate [an]

14 immediate threatened injury' to warrant a stay" (quoting *Boardman v. Pac. Seafood*

15 *Grp.*, 822 F.3d 1011, 1022 (9th Cir. 2016)); ECF No. 371-1 at 9–11; ECF No. 379 at

16 6–8. As this Court has made clear, such "immediate, direct, and significant" harm is all

17 that is required to demonstrate hardship for a ripeness inquiry. *See* ECF No. 405 at 16

18 (quoting *Municipality of Anchorage v. United States*, 980 F.2d 1320, 1326 (9th Cir.

19 1992)).

20   **C. The Court's Order is not procedurally barred.**

21   Defendants' claim that ImmDef's motion is procedurally barred merely reframes

22 its unsuccessful arguments on injury. ECF No. 407 at 4. As explained herein and in the

23 Court's Order, ImmDef's threat of immediate and irreparable injury, absent a stay, is

24 not speculative: by Defendants' own admission, MPP has been reimplemented and

25 applied to individuals. ECF No. 405 at 29. The initial implementation of MPP and the

26 record already before this Court amply demonstrate the harms ImmDef incurred and

27 will incur again. *Id.* A stay pursuant to 5 U.S.C. § 705 is therefore necessary and

28 appropriate.

(54 of 65), Page 54 of 65      Case: 25-2581, 05/09/2025, DktEntry: 9.1, Page 54 of 65
Case 2:20-cv-09893-JGB-SHR    Document 409    Filed 04/23/25    Page 12 of 23    Page
ID #:7352

1
2

## D. The Court's Order properly found ImmDef's stay request to be justiciable.

3       This Court should reject Defendants' attempt to relitigate a bevy of justiciability

4   arguments. First, Defendants insist that because a stay under 5 U.S.C. § 705 is a

5   "coercive order," it must be treated as an injunction and is thus precluded by 8 U.S.C.

6   § 1252(f)(1). ECF No. 407 at 5. Yet this argument has been rejected by every court to

7   consider the issue. *See* ECF No. 405 at 17–18; ECF No. 379 at 4; *see also Nat'l TPS*

8   *All. v. Noem*, --- F. Supp. 3d ---, 2025 WL 957677, at *12, 15 (N.D. Cal. Mar. 31, 2025)

9   (collecting cases), *appeal docketed*, 25-2120 (9th Cir. Apr. 2, 2025). As these courts

10  have repeatedly noted, section 1252(f)(1) is "nothing more or less than a limit on

11  injunctive relief," *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 481

12  (1999), and a "stay operates upon the judicial proceeding itself," rather than "directing

13  the conduct of a particular actor." *Nken*, 556 U.S. at 428; ECF No. 405 at 17.

14      Despite Defendants' apparent confusion about the final agency action at issue,

15  ECF No. 407 at 6, the Court's Order is clear that it is addressing the 2019 Migrant

16  Protection Protocols. *See, e.g.*, ECF No. 405 at 28–30 (analyzing the harm caused by

17  the reimplementation of the 2019 MPP policy). Plaintiffs' Complaint discusses the 2019

18  Migrant Protection Protocols—the challenged action in the SAC and in ImmDef's *ex*

19  *parte* application—as including several different memoranda and directives that

20  determined the implementation of the policy. SAC ¶¶ 58–59; *Bennett v. Spear*, 520 U.S.

21  154, 177–78 (1997) (cleaned up); *ONRC Action v. Bureau of Land Mgmt.*, 150 F.3d

22  1132, 1137 (9th Cir. 1998). As Defendants' own Termination Memorandum makes

23  clear, the implementation of MPP marked the "consummation" of DHS's

24  decisionmaking process, as a result of which DHS staff were bound to implement

25  8 U.S.C. § 235(b)(2)(C) according to the Protocols. *See* ECF No. 371-5 (Termination

26  Memo); *cf. Biden v. Texas*, 597 U.S. 785, 808–10 (2022) (explaining that DHS's June

27  1 MPP Termination Memo, as well as the October 29 Termination Memo, were both

28

- 6 -

(55 of 65), Page 55 of 65      Case: 25-2581, 05/09/2025, DktEntry: 9.1, Page 55 of 65
Case 2:20-cv-09893-JGB-SHR    Document 409    Filed 04/23/25    Page 13 of 23    Page
ID #:7353

1    final agency actions, "each of them an 'agency statement . . . designed to implement,

2    interpret, or prescribe law or policy.'" (quoting 5 U.S.C. § 551(4))).

3        Moreover, legal consequences flow from the Protocols because, as this Court has

4    acknowledged, ECF No. 405 at 29–30, their reimplementation has "actual or

5    immediately threatened effects" on both ImmDef and the population they serve.

6    *Aracely, R. v. Nielsen*, 319 F. Supp. 3d 110, 139 (D.D.C. 2018); *Wagafe v. Trump*, No.

7    C17-0094-RAJ, 2017 WL 2671254, at *10 (W.D. Wash. June 21, 2017) (finding final

8    agency action when a policy "affect[ed] the thousands of applicants whose qualified

9    applications [we]re allegedly indefinitely delayed or denied" as a result). Defendants

10    have given no indication of their intent to apply MPP differently—instead, they have

11    indicated that they were "restarting" the "2019 MPP Policy"—and publicly stated that

12    the 2019 directives were in place.[2] ECF No. 378 at 19 & n.7 (referring and citing to the

13    2019 ERO implementation memo as the "current operative guidance").[3] Accordingly,

14    MPP constitutes final agency action subject to APA review, and Defendants do not

15    contend otherwise. *See* ECF No. 407 at 6–7.[4]

16        Second, Defendants' argument that a § 705 stay cannot be granted with respect

17    to a policy already in effect holds no water. ECF No. 407 at 7. Courts have authority to

18    postpone the effective dates of agency actions that are already in effect. ECF No. 405

19    at 19 (collecting cases); 5 U.S.C. § 705 (stating that a "reviewing court . . . may issue

20    all necessary and appropriate process to postpone the effective date of an agency action

21

22    [2] Press Release, DHS, DHS Reinstates Migrant Protection Protocols, Allowing Officials

23    to Return Applicants to Neighboring Countries (Jan. 21, 2025),
https://www.dhs.gov/news/2025/01/21/dhs-reinstates-migrant-protection-protocols.

24    [3] *See* Memorandum from Nathalie R. Asher on Migrant Protection Protocols Guidance

25    to ICE Enforcement and Removal Operations Field Office Directors (Feb. 12, 2019),
https://www.ice.gov/sites/default/files/documents/Fact%20sheet/2019/ERO-MPP-

26    Implementation-Memo.pdf.

27    [4] *Am. Tort Reform Ass'n v. OSHA*, 738 F.3d 387, 395 (D.C. Cir. 2013), which concerned
an OSHA guideline that did not constitute final agency action, is inapposite. ECF No.

28    407 at 6.

- 7 -

(56 of 65), Page 56 of 65    Case: 25-2581, 05/09/2025, DktEntry: 9.1, Page 56 of 65
Case 2:20-cv-09893-JGB-SHK    Document 409    Filed 04/23/25    Page 14 of 23    Page
ID #:7354

1   *or* to preserve status or rights pending conclusion of the review proceedings") (emphasis

2   added). Thus, regardless of the extent to which MPP had been reimplemented, the Court

3   was well within its authority under § 705 to restore the status quo to the "the last

4   uncontested status which preceded the pending controversy." *Boardman v. Pac.*

5   *Seafood Grp.*, 822 F.3d 1011, 1024 (9th Cir. 2016); *see also* ECF No. 405 at 19; *West*

6   *Virginia v. E.P.A.*, 577 U.S. 1126 (2016); *Texas v. Biden*, 646 F. Supp. 3d 753, 770–71

7   (N.D. Tex. 2022).

8       Defendants' passing reference to the "multitude of problems" created by the

9   order in *Texas v. Biden* is similarly unavailing. ECF No. 407 at 8. In fact, Defendants

10  do not actually identify any specific problem with the *Texas* case, in which Defendants

11  themselves jointly requested an abeyance until July. ECF No. 405 at 6. It is unclear

12  whether there even remains a case or controversy in that matter. Nevertheless, the

13  courts' orders are operating on two separate agency actions because the *Texas* court is

14  considering the October 29, 2021 Memorandum. *See Texas*, 646 F. Supp. 3d at 761.

15      Finally, this Court has already considered and rejected Defendants' arguments

16  about the Secretary's discretionary authority under the return provision at 8 U.S.C.

17  § 1225(b)(2)(C). *See* ECF No. 261 at 29. As Plaintiffs have repeatedly noted, they do

18  not seek review of discretionary decisions made under 8 U.S.C. § 1225(b)(2)(C).

19  Instead, ImmDef's claims challenging MPP 1.0's implementation raise the legal issue

20  of whether Defendants have the authority to apply § 1225(b)(2)(C) in a manner that

21  violates Plaintiffs' rights under the INA, the APA, and the Constitution. *See United*

22  *States v. Midwest Oil Co.*, 236 U.S. 459, 505 (1915) ("The Constitution does not confer

23  upon [the Executive] any power to . . . suspend or repeal such [laws] as the Congress

24  enacts."); *Util. Air Regulatory Grp. v. E.P.A.*, 573 U.S. 302, 327 (2014) (power to

25  execute the laws "does not include a power to revise clear statutory terms that turn out

26  not to work in practice").

27

28

(57 of 65), Page 57 of 65      Case: 25-2581, 05/09/2025, DktEntry: 9.1, Page 57 of 65
Case 2:20-cv-09893-JGB-SHR      Document 409      Filed 04/23/25      Page 15 of 23   Page
ID #:7355

## E. MPP infringes on ImmDef's protected speech.

Defendants unsuccessfully attempt to refute ImmDef's First Amendment arguments on the basis that any restrictions on protected speech are "content neutral." ECF No. 407 at 8. The Court addressed this precise issue in its Order, finding that even if the applicable restrictions are content neutral, ImmDef has demonstrated that MPP "burden[s] substantially more speech than necessary to further [the Government's] interests." ECF No. 405 at 24 (citation omitted). The Court granted the stay in part because Defendants restricted ImmDef's speech by limiting the time and conditions under which counsel could provide legal services to their clients, by preventing ImmDef from advising potential clients, and by forbidding ImmDef from presenting Know Your Rights presentations. ECF No. 405 at 24. Given that MPP 1.0 made it "exponentially more difficult" for ImmDef to exercise its First Amendment right to consult with its clients and prospective clients, SAC ¶¶ 106, 107; Toczylowski Decl. ¶¶ 23, 25; Cargioli Decl. ¶¶ 9–13, the Court correctly found that "[t]he reimplementation of MPP will again impose these barriers," ECF No. 405 at 24, and will therefore violate ImmDef's First Amendment rights.

## F. The Court has jurisdiction to consider Plaintiff's claims.

While Defendants renew their arguments that 8 U.S.C. § 1252(a)(5) and (b)(9) preclude this Court from reviewing individual MPP respondents' immigration cases, they disregard the critical fact that ImmDef *alone* requested this stay, and that ImmDef, as an organizational plaintiff (and not a class representative), is not subject to § 1252(b)(9). *See, e.g.*, *Las Americas Immigrant Advoc. Ctr. v. Trump*, 475 F. Supp. 3d 1194, 1209 (D. Or. 2020). This Court has repeatedly rejected Defendants' jurisdictional arguments and should do so again. ECF No. 405 at 20–21; ECF No. 261 at 21–28.[5]

---

[5] Even if Defendants' jurisdictional arguments were somehow construed to apply to ImmDef's prospective clients, rather than ImmDef as the organization, the Court has repeatedly found that the Individual Plaintiffs' claims here are "independent of or collateral to the removal process," and therefore are not channeled by section 1252(a)(5)

(Footnote Cont'd on Following Page)

(58 of 65), Page 58 of 65     Case: 25-2581, 05/09/2025, DktEntry: 9.1, Page 58 of 65
Case 2:20-cv-09893-JGB-SHR     Document 409     Filed 04/23/25     Page 16 of 23     Page
ID #:7356

1    The Court should similarly reject Defendants' arguments based on *Pacific*

2    *Radiation Oncology, LLC v. Queen's Medical Center*, 810 F.3d 631, 636 (9th Cir.

3    2015). ECF No. 407 at 9. The conduct asserted in the underlying complaint—the

4    unlawful implementation of MPP 1.0—is squarely at issue in ImmDef's application and

5    this Court's Order, which address the implementation of the same exact policy. *See*

6    *generally* ECF Nos. 371-1, 405. Because ImmDef is seeking to prevent the same type

7    of harm and rights violations alleged in the complaint, the Court properly found the

8    requisite "relationship between the injury claimed in the [Application] and the conduct

9    asserted in the underlying complaint." ECF No. 405 at 21 (quoting *Pac. Radiation*

10   *Oncology, LLC*, 810 F.3d at 636).

11   ### G. MPP 1.0 violates the right to counsel codified in the INA.

12   Defendants take issue with this Court's principled finding that 8 U.S.C. § 1229

13   mandates "the right to contact counsel and the time, space, and ability to consult with

14   counsel safety and confidentially." ECF No. 405 at 27. But they fail to acknowledge

15   the unprecedented difficulty of providing representation in removal proceedings in the

16   United States to respondents who are forced to remain outside the country or that

17   noncitizens' "fundamental" right to counsel "must be respected in substance as well

18   as in name." *Orantes-Hernandez v. Thornburgh*, 919 F.2d 549, 554 (9th Cir. 1990)

19   (citation and quotation marks omitted). Moreover, as the Court correctly found, "the

20   Government cannot actively facilitate a breakdown in ongoing or potential attorney-

21   client relationships, and then claim no responsibility or control over it." ECF No. 405

22   at 27. Defendants' implementation of MPP 1.0 thus violated the right to counsel

23   mandated by the INA.

24   ### H. MPP 1.0 violates the INA's right to apply for asylum.

25   This Court correctly concluded that the existence of 8 U.S.C. § 1225(b)(2)(C)

26   does not permit the government to abrogate "the legal rights bestowed upon asylum

27

28   and (b)(9). ECF No. 407 at 20; ECF No. 261 at 23, 25 (quoting *Chhoeun v. Marin*, 306
     F. Supp. 3d 1147, 1159 (C.D. Cal. 2018)).

- 10 -

(59 of 65), Page 59 of 65    Case: 25-2581, 05/09/2025, DktEntry: 9.1, Page 59 of 65
Case 2:20-cv-09893-JGB-SHR    Document 409    Filed 04/23/25    Page 17 of 23   Page
ID #:7357

1   seekers by Congress." ECF No. 405 at 25–26. Accordingly, Defendants' argument that

2   asylum seekers' theoretical ability to apply for asylum precludes any violation of

3   8 U.S.C. § 1158(a)(1), ECF No. 407 at 10–11, once again fails. *See* ECF No. 405 at 25–

4   26. "It is the hollowest of rights that [a noncitizen] must be allowed to apply for

5   asylum," when the government has enacted policies such that their application has no

6   chance of success. *EBSC I*, 932 F.3d at 771. Indeed, Defendants themselves have

7   "conceded publicly and in papers filed during this litigation that MPP is indefensible as

8   a matter of policy, in large part because of the burdens it imposed on the right to apply

9   for asylum." ECF No. 405 at 26 (citing Termination Memo, ECF No. 371-7).

10  ## II.    THE BALANCE OF HARMS STRONGLY FAVORS LEAVING THE
11  COURT'S ORDER IN PLACE

12  ### A. ImmDef will be irreparably harmed by a stay of the Court's order.

13      Defendants' arguments that ImmDef will not suffer irreparable harm, *see* ECF

14  No. 407 at 13, ignore both clear record evidence and Defendants' own statements that

15  "'demonstrate an immediate threatened injury' to warrant a stay." *See* ECF No. 405 at

16  29 (citing *Boardman*, 822 F.3d at 1022–23) (cleaned up). As this Court has already

17  noted, "Defendants offer no evidence" for their contention that ImmDef's harm is

18  speculative. *Id.* By contrast, ImmDef has submitted declarations demonstrating how the

19  reimplementation of MPP will adversely impact the organization by "impairing its

20  ability to provide meaningful legal representation to clients in removal proceedings;

21  jeopardizing the safety of its staff; threatening its financial stability; and otherwise

22  undermining its core business activities." ECF No. 405 at 30. The past harms suffered

23  by ImmDef under MPP 1.0 demonstrate the type of "repeated [irreparable] injury" it

24  will again face if this Court allows MPP to be reimplemented. *Id.* at 29 (quoting *O'Shea

25  v. Littleton*, 414 U.S. 488, 496–97 (1974)).

26  ### B. Defendants will not be irreparably harmed absent a stay.

27      As this Court has found, ImmDef has established a likelihood of success on the

28  merits of its claims that the reimplementation of MPP 1.0 violates its rights under the

- 11 -

(60 of 65), Page 60 of 65    Case: 25-2581, 05/09/2025, DktEntry: 9.1, Page 60 of 65
Case 2:20-cv-09893-JGB-SHR    Document 409    Filed 04/23/25    Page 18 of 23    Page
ID #:7358

1   First Amendment, the INA, and the APA. *See* ECF No. 405 at 21–27. Defendants cannot

2   suffer harm from complying with the Constitution and with the immigration laws

3   enacted by Congress. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 576 (1992)

4   (discussing "the public interest in Government observance of the Constitution and

5   laws"). Defendants claim they will be harmed by an inability to "effectuate" the

6   contiguous territory return provision of 8 U.S.C. § 1225(b)(2)(C), ECF No. 407 at 11

7   (citing *Maryland v. King*, 567 U.S. 1301, 1303 (2012) (Roberts, C.J., in chambers)),

8   but—as this Court also found—that provision of the INA "must be read within the

9   context of a broader statutory scheme" that includes the right to apply for asylum and

10  the right to counsel. ECF No. 405 at 25–26. These parts of the statute, too, were enacted

11  by Congress and must be given effect.

12      Nor are Defendants harmed by any improper intrusion into the Executive's

13  authority. The Constitution vests Congress—not the Executive—with "plenary power

14  over immigration." *Sec. & Exch. Comm'n v. Jarkesy*, 603 U.S. 109, 129 (2024). "Where

15  Congress has acted, the regulation of immigration is an area in which Congress

16  exercises plenary power." Theodore B. Olson, *Proposed Interdiction of Haitian Flag*

17  *Vessels*, 5 Op. O.L.C. 242, 244 (1981). Defendants improperly rely on *United States ex*

18  *rel. Knauff v. Shaughnessy*, ECF No. 407 at 11, which concerned the narrower issue of

19  the power to exclude noncitizens during wartime—which the Supreme Court located

20  within both the legislative and executive branches—and not the entirety of the

21  immigration system, which is governed by statutes enacted by Congress. 338 U.S. 537,

22  542–43 (1950). Under our system of separation of powers, the President does not have

23  the "conclusive and preclusive" power over immigration that permits him to disregard

24  immigration statutes. *Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579, 638

25  (1952) (Jackson, J., concurring).

26      Finally, Defendants have conceded that MPP is "indefensible as a matter of

27  policy." ECF No. 405 at 26 (citing Termination Memo). It is hard to fathom how

28

PLAINTIFF IMMIGRANT DEFENDERS LAW CENTER'S OPPOSITION TO DEFENDANTS' *EX PARTE*
APPLICATION TO STAY THE STAY OF AGENCY ACTION UNDER 5 U.S.C. § 705

(61 of 65), Page 61 of 65    Case: 25-2581, 05/09/2025, DktEntry: 9.1, Page 61 of 65
Case 2:20-cv-09893-JGB-SHK    Document 409    Filed 04/23/25    Page 19 of 23    Page
ID #:7359

1    Defendants could be harmed by an inability to carry out a policy that they themselves

2    have condemned so unequivocally.

3              **C. A stay of the Court's Order will injure other interested parties.**

4              MPP 1.0 trapped 70,000 asylum seekers in dangerous conditions in Mexico

5    where tens of thousands experienced rights violations, misery, and violence. *See* ECF

6    No. 405 at 6; *see also* Rebecca G., *Remain in Mexico: Unlawful, Ineffective, and Must

7    Never Return*, Human Rights First 1 (Jan. 10, 2025) (documenting over 2,500 attacks

8    against people enrolled in MPP).[6] Staying the Court's Order would mean that asylum

9    seekers could once again be subjected to upheaval and violence, deprived of their ability

10   to access the asylum system, and stripped of their ability to access and communicate

11   with counsel. As the Court noted in its Order, members of the Terminated Case subclass

12   face the threat of immediate or irreparable injury should they approach the United States

13   border to seek asylum, as they could again be placed in MPP. *See* ECF No. 405 at 9.

14             **D. The public interest favors a continued stay of the reimplementation
15                  of MPP 1.0.**

16             The public interest is served by a stay that ensures that individuals are not sent to

17   dangerous conditions in Mexico without access to counsel. *See Hernandez v. Sessions*,

18   872 F.3d 976, 996 (9th Cir. 2017) (finding that the "public interest benefits" when

19   "individuals are not deprived of their liberty" by a "likely unconstitutional process");

20   *Huisha-Huisha v. Mayorkas*, 27 F.4th 718, 734 (D.C. Cir. 2022) (recognizing the

21   benefit of sparing individuals "extreme violence"); *see also Nken*, 556 U.S. at 436.

22   Defendants have already agreed that MPP imposed "substantial and unjustifiable human

23   costs" on asylum seekers forced to wait in Mexico. ECF No. 371-7 (Termination Memo)

24   at 2. In the context of another policy that restricted asylum access under Section 265 of

25   Title 42, the D.C. Circuit Court of Appeals noted "stomach-churning evidence of death,

26   torture, and rape" in Mexico. *Huisha-Huisha*, 27 F.4th at 733. The public interest cannot

27   _____

28   [6]  *Available at* https://humanrightsfirst.org/library/remain-in-mexico-unlawful-and-
     ineffective.

PLAINTIFF IMMIGRANT DEFENDERS LAW CENTER'S OPPOSITION TO DEFENDANTS' *EX PARTE*
APPLICATION TO STAY THE STAY OF AGENCY ACTION UNDER 5 U.S.C. § 705

(62 of 65), Page 62 of 65     Case: 25-2581, 05/09/2025, DktEntry: 9.1, Page 62 of 65
Case 2:20-cv-09893-JGB-SHR     Document 409     Filed 04/23/25     Page 20 of 23     Page
ID #:7360

1   support such mistreatment of asylum seekers trying to avail themselves of the

2   immigration laws enacted by Congress.

### E. The scope of the stay should not be narrowed.

4   Finally, the Court should reject Defendants' unsupported arguments to narrow

5   the scope of the Court's stay. ECF No. 407 at 1, 12, 14. First, "where agency action is

6   challenged as a violation of the APA, nationwide relief is commonplace." *Nat'l TPS*

7   *All.*, 2025 WL 957677, at *45 (citing *E. Bay Sanctuary Covenant v. Biden*, 993 F.3d

8   640, 680-81 (9th Cir. 2021) ("*ESBC III*"). Second, a stay limited to this District would

9   not remedy ImmDef's inability to meet with potential clients, who would be trapped

10  outside this District. Third, as ImmDef has already explained, a geographically limited

11  stay would allow Defendants to circumvent this Court's Order by moving them out of

12  California and changing the venue of their MPP proceedings to other jurisdictions along

13  the U.S.-Mexico border.[7] Moreover, any such limitation would defeat the purpose of a

14  § 705 stay—to maintain the "relevant status quo," which would not be achieved by a

15  "piecemeal approach." ECF No. 405 at 31–32 (quoting *Texas v. Biden*, 646 F. Supp. 3d

16  at 781).[8]

### CONCLUSION

18  For the foregoing reasons, ImmDef respectfully requests that this Court deny

19  Defendants' *ex parte* application to stay the Court's Order staying the reimplementation

20  of MPP 1.0 pending the conclusion of this litigation.

---

[7] *See, e.g.*, American Immigration Council, *The "Migrant Protection Protocols": An Explanation of the Remain in Mexico Program*, at 3 (Feb. 2025), https://shorturl.at/NkQZ5.

[8] Defendants also point to upcoming arguments before the Supreme Court on the propriety of nationwide injunctions. ECF No. 407 at 12. However, these cases relate to injunctions—not stays, which generally afford nationwide relief. *See ESBC III*, 993 F.3d at 680–81.

(63 of 65), Page 63 of 65    Case: 25-2581, 05/09/2025, DktEntry: 9.1, Page 63 of 65
Case 2:20-cv-09893-JGB-SHK    Document 409    Filed 04/23/25    Page 21 of 23    Page
ID #:7361

Dated:  April 23, 2025                    ARNOLD & PORTER KAYE SCHOLER LLP

                                          By:  /s/ Matthew T. Heartney
                                                MATTHEW T. HEARTNEY
                                                HANNAH R. COLEMAN
                                                DANIEL S. SHIMELL
                                                KATHLEEN X. WENG
                                                ALLYSON C. MYERS

                                                Attorneys for Plaintiffs

Dated:  April 23, 2025                    CENTER FOR GENDER & REFUGEE
                                          STUDIES

                                          By:  /s/ Melissa Crow
                                                MELISSA CROW
                                                ANNE DUTTON

                                                Attorneys for Plaintiffs

Dated:  April 23, 2025                    SOUTHERN POVERTY LAW CENTER

                                          By:  /s/ Efrén Olivares
                                                EFRÉN OLIVARES

                                                Attorneys for Plaintiffs

Dated:  April 23, 2025                    NATIONAL IMMIGRATION PROJECT
                                           OF THE NATIONAL LAWYERS GUILD

                                          By:  /s/ Sirine Shebaya
                                                SIRINE SHEBAYA
                                                MATTHEW VOGEL
                                                VICTORIA F. NEILSON
                                                STEPHANIE M. ALVAREZ-JONES

                                                Attorneys for Plaintiffs

- 15 -

(64 of 65), Page 64 of 65    Case: 25-2581, 05/09/2025, DktEntry: 9.1, Page 64 of 65
Case 2:20-cv-09893-JGB-SHK    Document 409    Filed 04/23/25    Page 22 of 23    Page
ID #:7362

Dated: April 23, 2025                      INNOVATION LAW LAB


                                          By:    /s/ Tess Hellgren
                                                 TESS HELLGREN
                                                 STEPHEN W. MANNING
                                                 JORDAN CUNNINGS
                                                 KELSEY PROVO
                                                 ROSA SAAVEDRA VANACORE

                                                 Attorneys for Plaintiffs

(65 of 65), Page 65 of 65    Case: 25-2581, 05/09/2025, DktEntry: 9.1, Page 65 of 65
Case 2:20-cv-09893-JGB-SHR    Document 409    Filed 04/23/25    Page 23 of 23    Page
ID #:7363

# CERTIFICATE OF COMPLIANCE PURSUANT TO L.R. 11-6.2

The undersigned, counsel of record for Plaintiffs, certifies that this brief contains 4,798 words, which complies with the word limit of L.R. 11-6.1.

Dated:  April 23, 2025                    ARNOLD & PORTER KAYE SCHOLER LLP

                                          By:  /s/ Matthew T. Heartney
                                               MATTHEW T. HEARTNEY

                                          Attorneys for Plaintiffs