No. 25-2581

IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

IMMIGRANT DEFENDERS LAW CENTER,
Plaintiff-Appellee,

v.

KRISTI NOEM, ET AL.,
Defendants-Appellants.

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF CALIFORNIA
District Court Case No. 2:20-cv-09893

APPELLANTS' SUPPLEMENTAL BRIEF

## INTRODUCTION

ImmDef is one of several plaintiffs in this case, and the district court has already certified a class of individual plaintiffs. ImmDef alone sought the preliminary relief now before the court. Yet the district court granted *universal* relief, extending not only to all the parties to this case who declined to join ImmDef's motion, but also to all nonparties.

The district court should not have issued any relief at all, as the government's stay briefs explain. The Supreme Court's recent decision in *Trump v. CASA, Inc.*, 606 U.S. ---, 2025 WL 1773631 (June 27, 2025), underscores that the Court must, at minimum, grant a stay narrowing that relief to apply only to the single plaintiff that sought relief.

The district court's universal relief cannot be properly understood as a § 705 stay, so it falls squarely within *CASA*'s holding barring universal injunctions. And even if it were a § 705 stay, § 705 did not depart from the traditional equitable principles that *CASA* articulated, so universal § 705 relief is no more permissible than a universal preliminary injunction. Either way, the relief entered below is "at odds with our system of divided judicial authority" and is "in considerable tension with the reality that district court opinions lack precedential force even vis-à-vis other judges in the same judicial district." *CASA*, 2025 WL 1773631, at *13 n.17; *Camreta v. Greene*, 563 U.S. 692, 709, n.7 (2011). The district court's sweeping

2

"stay" cannot stand under *CASA*. At minimum, the Court should grant a stay limiting the universal scope of the district court's order.

## ARGUMENT

The Migrant Protection Protocols ("MPP") exercise the express authority of the Department of Homeland Security ("DHS") under 8 U.S.C. § 1225(b)(2)(C) to return certain aliens temporarily to Mexico pending their removal proceedings. The district court granted universal preliminary relief, captioned as a stay under § 705 of the Administrative Procedure Act ("APA"), of the "reimplementation" of MPP. It issued this universal relief at the request of ImmDef, a single organizational Plaintiff. The Court should stay that order wholesale, for the reasons the government has already explained in its stay briefing. But at minimum, the Court should stay the district court's order except as to ImmDef's clients because the government is likely to succeed in arguing that the relief exceeded the district court's remedial powers.

**I.     The relief ordered by the district court falls within *CASA*'s holding because it is really a preliminary injunction.**

Universal preliminary injunctions are unlawful. In *CASA*, the Supreme Court addressed "universal injunctions"—remedies that bar the defendant from enforcing "a law or policy against *anyone*"—issued under the Judiciary Act of 1789. 2025 WL 1773631, at *4. Because "[n]either a universal injunction nor any analogous form of relief was available … at the time of the founding," *id.* at *6, the "universal

3

injunction … falls outside the bounds of a federal court's equitable authority under the Judiciary Act." *Id.* at *8.

At most, a court granting equitable relief "may administer complete relief *between the parties.*" *Id*. at *11 (cleaned up). "Under this principle, the question is not whether an injunction offers complete relief to everyone potentially affected by an allegedly unlawful act; it is whether an injunction will offer complete relief *to the plaintiffs before the court.*" *Id*. And even then, "[c]omplete relief is not a guarantee— it is the maximum a court can provide." *Id*. at *12.

Here, the district court entered relief captioned as a stay under § 705 of the APA, but the order was injunctive in nature. A stay may operate to suspend a "source of authority," *Nken v. Holder*, 556 U.S. 418, 429 (2009), for example, by delaying the effective date of an agency's rule from (say) July 1 to August 1. But the district court's order did not operate on any "source of authority." Instead, it was directed at "reimplementation" of MPP, and it could thus have effect only by prohibiting *actions* to "reimplement" MPP. The order's true nature and effect, superficial labels aside, are thus injunctive.

The relief ordered by the district court cannot properly be understood as § 705 relief for a second, independent reason: § 705 relief postponing an agency action cannot be entered after the agency action has already taken effect. Courts have concluded that § 705's phrase "postpone the effective date" of an agency action

4

authorizes the "postpone[ment of] the effective date of *a not yet effective rule,* pending judicial review"—but not suspension of a policy that is *already in effect.* *See, e.g.*, *Safety-Kleen Corp. v. EPA*, Nos. 92-1629, 92-1639, 1996 U.S. App. LEXIS 2324, at *2-3 (D.C. Cir. Jan. 19, 1996) (emphasis added). Section 705 uses identical language to refer to "the reviewing court ... postpon[ing] the effective date of an agency action" as it does when addressing an agency decision to "postpone the effective date[.]" The use of an identical phrase in the first and second sentences of § 705 must be presumed to be intentional. *E.g.*, *Sorenson v. Sec'y of Treasury*, 475 U.S. 851, 860 (1986). Because MPP has been in effect, off and on, since 2019, its effective date has already passed, and the district court lacked authority to "stay" it under § 705.

At bottom, the district court lacked authority to enter relief that extended beyond the sole party seeking relief, ImmDef. *CASA*'s holding squarely applies to this case to bar the universal relief the district court granted. If any relief were appropriate, it must be limited to ImmDef alone.

This is not the unusual case in which granting relief to the plaintiff will necessarily and incidentally amount to a grant of universal relief. *See CASA*, 2025 WL 1773631, at *17 (Thomas, J., concurring) (warning that "such cases are by far the exception"). MPP operates on the specific individuals enrolled in it. ImmDef may, in the future, seek to represent some of those specific individuals. Relief from

MPP applying to ImmDef's clients, by permitting them to remain in the United States pending their removal proceedings, would provide relief for ImmDef from the policy it challenges. This is, in other words, not a case in which "it is all but impossible" to "craft relief" that is limited to the named plaintiff's injuries. *CASA*, 2025 WL 1773631, at *11 n.12. Providing relief to the individuals ImmDef represents in the future does not indivisibly extend relief to the whole universe of nonparties. And even if ImmDef argues that some vestiges of the harms it presses remained under that approach, "[c]omplete relief is not a guarantee," but is instead "the maximum a court can provide." *CASA*, 2025 WL 1773631, at *12.[1]

## II. Regardless, the equitable principles established in *CASA* apply to relief issued under § 705.

Even if the district court's order could properly be understood as entering preliminary relief under the APA, 5 U.S.C. § 705, the equitable principles *CASA* identified would still apply.

*CASA* reserved the question whether the equitable limitations applicable to relief authorized by the Judiciary Act of 1789 also apply to final APA relief under § 706(2), as APA relief was not before the Court. 2025 WL 1773631 at *8 n.10. But

---

[1] Universal relief is especially disconcerting here because there is a certified class, but it did not join ImmDef's motion for relief. Of course, even if it had, classwide relief would violate 8 U.S.C. § 1252(f)(1). *See, e.g.*, ECF# 6.1 at 14-17. But the fact that the class declined to seek relief underscores that it was improper for ImmDef to receive universal relief.

6

the analysis for preliminary APA relief under § 705 is straightforward. Nothing in § 705 rebuts the presumption that traditional equitable rules apply to relief ordered under § 705, so § 705, like the Judiciary Act of 1789, does not authorize universal relief.

Section 705 authorizes courts to "issue all necessary and appropriate process" to postpone an agency action or "to preserve status or rights pending conclusion of the review proceedings." 5 U.S.C. § 705. The Supreme Court recently interpreted closely analogous language in the National Labor Relations Act—permitting a court "to grant … such temporary relief … as it deems just and proper"—to "empower courts to grant equitable relief" and to require that they "exercise that authority in a manner consistent with traditional principles of equity." *Starbucks Corp. v. McKinney*, 602 U.S. 339, 345 (2024) (quoting 29 U.S.C. § 160(j)). For § 705, just as for the similarly phrased National Labor Relations Act, "[n]othing … displaces the presumption" that "traditional equitable principles govern." *Id.*; *see also, e.g.*, *Hecht v. Bowles*, 321 U.S. 321, 330 (1944) (courts should not "lightly imply" a "major departure" from the "long tradition" of equity when interpreting a remedial statute).

The text of § 705 contains no statement that could justify a departure from equitable principles. Instead, the text's reference to "all necessary and appropriate process" is best understood to reference the traditional equitable principles

governing when preliminary relief is necessary and appropriate. 5 U.S.C. § 705. Reflecting this, courts, including the district court, already acknowledge that traditional principles of equity govern relief under § 705 by applying the traditional four-factor injunction test to evaluate § 705 motions. *See Starbucks Corp. v. McKinney*, 602 U.S. 339, 345 (2024) ("[T]he four criteria identified in [*Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7 (2008)] encompass the relevant equitable principles.").

Other sources further confirm that § 705 should not be understood to radically break from equitable principles. The Supreme Court recognized before the APA's enactment that the power to stay an agency order pending review is part of a federal court's "traditional equipment for the administration of justice." *Scripps-Howard Radio v. FCC*, 316 U.S. 4, 16-17 (1942). After the APA's enactment, the Court continued to maintain that "[t]he relevant legislative history of" § 705 "indicates that it was primarily intended to reflect" that "existing law," not to "fashion new rules," unmoored from principles of equity, governing the remedies courts can provide. *Sampson v. Murray*, 415 U.S. 61, 80 n.15 (1974). Section 705 thus did not depart from the traditional remedies available to courts by creating a new remedy unbounded by traditional equitable principles—including, as relevant here, the "party-specific principles" that "permeate our understanding of equity." *CASA*, 2025 WL 1773631, at *7.

8

Further supporting this conclusion, one treatise published soon after the APA's enactment observed that § 705 merely "relates the power granted under the All Writs statute to the review of administrative orders" rather than changing existing law on remedies. Louis L. Jaffe, *Judicial Control of Administrative Action* 662 (1965). Another similarly recounted that the § 705 remedy "is an equitable power, to be exercised 'upon such conditions as may be required.'" Tom C. Clark, *Attorney General's Manual on the Administrative Procedure Act* 106 (1947).

As the text, Supreme Court precedent, the applicability of the four-factor injunction test, and other authorities confirm, § 705 is bounded by traditional equitable principles, just like the Judiciary Act of 1789. And just as those principles foreclose universal preliminary injunctions, they likewise foreclose universal relief under § 705.[2]

---

[2] The scope of *final* relief available under the APA is not directly relevant in this posture. *See* 5 U.S.C. § 706; *CASA*, 2025 WL 1773631 at *8 n.10. But to the extent ImmDef argues that § 705 relief must be universal because § 706 relief is universal, that argument would fail. For one thing, no principle requires that preliminary relief be as broad as final relief. For another, the APA does not authorize universal vacatur. Section 706(2) does not authorize any particular remedy, but rather establishes a rule of decision directing the reviewing court to disregard unlawful agency actions when resolving the case before it. Remedies "ordinarily 'operate with respect to specific parties,'" rather than "'on legal rules in the abstract,'" but reading § 706 to authorize universal vacatur would do the opposite. *California v. Texas*, 593 U.S. 659, 671 (2021) (citation omitted).

9

### III. Limiting relief to ImmDef's clients would be workable and would redress ImmDef's supposed injuries.

The Court should stay the district court's order wholesale because the government is likely to succeed in showing that ImmDef is not entitled to relief. But if the Court were to conclude otherwise, it should, at minimum, grant a partial stay limiting the district court's order to exempting ImmDef's clients from MPP—in other words, permitting any future ImmDef clients who are enrolled in MPP to remain in the United States during their removal proceedings.

Because ImmDef is the only party seeking relief, any remedy can—at maximum—afford complete relief to *ImmDef*. And ImmDef would receive "complete relief" if the government were barred from applying MPP's "reimplementation" to its clients and only its clients.

That remedy would be administrable from DHS's perspective. In the event ImmDef identifies and decides to represent anyone who has been enrolled in MPP, ImmDef could identify those clients to DHS, and DHS could permit those individuals to re-enter the United States. That remedy would also redress the injuries ImmDef asserts, all of which are tied to its clients' location in Mexico. (Of course, the government maintains that ImmDef has not identified any cognizable injuries sufficient to give rise to standing—and any preliminary relief must be calibrated to any cognizable injuries ImmDef has actually shown it will suffer.)

To the extent ImmDef argues that this remedy would not afford it *complete* relief, that objection would not permit the Court to enter broader relief. As the Supreme Court cautioned: "to say that a court *can* award complete relief is not to say that it *should* do so." *CASA*, 2025 WL 1773631, at *12. Instead, complete relief is the "maximum a court can provide," not "a guarantee." *Id.* Here, a suit challenging MPP filed by a plaintiff who is enrolled in MPP could obtain relief only for that plaintiff. It would be backwards to allow a plaintiff like ImmDef to receive *broader* relief than an individual plaintiff could when ImmDef is not itself directly regulated by MPP.

Moreover, "in equity, 'the broader and deeper the remedy the plaintiff wants, the stronger the plaintiff's story needs to be.'" *Id.* (quoting S. Bray & P. Miller, *Getting Into Equity*, 97 NOTRE DAME L. REV. 1763, 1797 (2022)). ImmDef's arguments do not justify any relief, let alone universal relief. And universal relief would be significantly "more burdensome to the defendant than necessary" to provide relief to ImmDef. *See Califano v. Yamasaki*, 442 U.S. 682, 702 (1979). Indeed, "[t]here is scarcely a suit at law, or in equity, … that does not involve a question in which other parties are interested." *CASA*, 2025 WL 1773631, at *7 (citations omitted). "But to allow all persons subject to the statute to be treated as parties to a lawsuit would confound the established order of judicial proceedings." *Id*.

11

## **CONCLUSION**

The Court should deny ImmDef's motion to dismiss and stay the district court's order pending appeal. If the Court declines to stay the district court's order in its entirety, it should at minimum limit the order to apply only to ImmDef instead of issuing universal relief. *See* ECF# 29.2 at 113.

Respectfully submitted,

*/s/Alanna T. Duong*

| | |
|---|---|
| BRETT A. SHUMATE | ALANNA T. DUONG |
| Assistant Attorney General | Senior Litigation Counsel |
| Civil Division | Office of Immigration Litigation |
| | Civil Division, U.S. Dept. of Justice |
| DREW C. ENSIGN | P.O. Box 878, Ben Franklin Station |
| Deputy Assistant Attorney General | Washington, DC 20044 |
| | Tel: (202) 305-7040 |
| BRIAN C. WARD | alanna.duong@usdoj.gov |
| Acting Assistant Director | |
| | |
| CARA E. ALSTERBERG | July 7, 2025 |
| CATHERINE M. RENO | |
| Senior Litigation Counsel | Attorneys for Defendants-Appellants |

## <u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to Federal Rule of Appellate Procedure 27(d)(2)(A) and this Court's Order, I certify that the foregoing was prepared using 14-point Times New Roman type, is proportionally spaced, and contains 2515/3000 words, exclusive of the tables of contents and citations, and certificates of counsel.

*/s/ Alanna T. Duong*
ALANNA T. DUONG
Senior Litigation Counsel
U.S. Department of Justice

July 7, 2025                    Attorney for Defendants-Appellants

## <u>CERTIFICATE OF SERVICE</u>

I certify that on July 7, 2025, I filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate ACMS system. I further certify that all participants in the case are registered ACMS users and that service will be accomplished through that system.

*/s/ Alanna T. Duong*
ALANNA T. DUONG
Senior Litigation Counsel
U.S. Department of Justice
