No. 25-2581

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

———————————————————

IMMIGRANT DEFENDERS LAW CENTER,

*Plaintiff-Appellee*,

v.

KRISTI NOEM, et al.,

*Defendants-Appellants.*

———————————————————

On Appeal from the United States District Court for the
Central District of California
No. 2:20-cv-09893 (Hon. Jesus G. Bernal)

———————————————————

## PLAINTIFF-APPELLEE IMMIGRANT DEFENDERS
## LAW CENTER'S SUPPLEMENTAL BRIEF

———————————————————

Matthew T. Heartney
Hannah R. Coleman
Daniel S. Shimell
Allyson C. Myers
ARNOLD & PORTER
KAYE SCHOLER LLP
777 South Figueroa Street, 44th Fl.
Los Angeles, CA 90017
(213) 243-4000

*Counsel for Plaintiff-Appellee Immigrant Defenders Law Center*
*(continued on next page)*

Steven L. Mayer
Sean M. SeLegue
ARNOLD & PORTER
KAYE SCHOLER LLP
Three Embarcadero Center, 10th Floor
San Francisco, CA 94111
(415) 356-3000

Kathleen X. Weng
ARNOLD & PORTER
KAYE SCHOLER LLP
601 Massachusetts Avenue, N.W.
Washington, DC 20001
(202) 942-5000

Melissa Crow
CENTER FOR GENDER &
REFUGEE STUDIES
1121 14th Street, NW, Suite 200
Washington, DC 20005
(202) 355-4471

Dulce Rodas
Edith Sangüeza
CENTER FOR GENDER &
REFUGEE STUDIES
200 McAllister Street
San Francisco, CA 94102
(415) 581-8843

Stephanie M. Alvarez-Jones*
Victoria F. Neilson†
NATIONAL IMMIGRATION PROJECT
OF THE NATIONAL LAWYERS GUILD
1763 Columbia Road NW
Suite 175 #896645 Washington, DC 20009
(202) 470-2082

Stephen W. Manning
Jordan Cunnings
Kelsey Provo
Tess Hellgren
Rosa Saavedra Vanacore
INNOVATION LAW LAB
333 SW 5th Ave, Suite 200
Portland, OR 97204
(503) 922-3042

*Counsel for Plaintiff-Appellee Immigrant Defenders Law Center*

\* *not admitted in DC; working remotely from and admitted in Georgia only*
† *not admitted in DC; working remotely from and admitted in New York only*

# <u>TABLE OF CONTENTS</u>

**Page**

I.  *Trump v. CASA* Does Not Apply to Stays under APA § 705 ..............................1

II.  Universal Relief under APA §§ 705 and 706 Is Consistent with Settled Caselaw and History.................................................................................................4

III. A More Limited Stay Is Impracticable and Would Not Grant ImmDef Complete Relief.....................................................................................................7

CONCLUSION........................................................................................13


II.  Universal Relief under APA §§ 705 and 706 Is Consistent with Settled Caselaw and History.................................................................................................4

III. A More Limited Stay Is Impracticable and Would Not Grant ImmDef Complete Relief.....................................................................................................7

CONCLUSION........................................................................................13

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Career Colls. & Schs. of Texas v. U.S. Dep't of Educ.*,
  98 F.4th 220 (5th Cir. 2024), *cert. granted in different part*, 145 S.
  Ct. 1039 (2025) ...................................................................................3, 11

*Corner Post, Inc. v. Bd. of Governors of Fed. Rsrv. Sys.*,
  603 U.S. 799 (2024) (Kavanaugh, J., concurring).........................5, 6, 7

*D.C. v. U.S. Dep't of Agric.*,
  444 F. Supp. 3d 1 (D.D.C. 2020)....................................................7

*Earth Island Inst. v. Ruthenbeck*,
  490 F.3d 687 (9th Cir. 2007), *aff'd in part, rev'd in part on other
  grounds sub nom. Summers v. Earth Island Inst.*, 555 U.S. 488
  (2009)......................................................................................7

*East Bay Sanctuary Covenant v. Garland*,
  994 F.3d 962 (9th Cir. 2020) ....................................................11, 12

*Grupo Mexicano de Desarrollo, S.A. v. All. Bond Fund, Inc.*,
  527 U.S. 308 (1999)....................................................................2, 11

*Payne v. Hook*,
  74 U.S. (7 Wall.) 425 (1868) ........................................................2

*Shawkee Mfg. Co. v. Hartford-Empire Co.*,
  322 U.S. 271 (1944)....................................................................5

*Texas v. Biden*,
  646 F. Supp. 3d 753 (N.D. Tex. 2022) ............................................5

*Trump v. CASA, Inc.*,
  No. 24A884, --- S. Ct. ---, 2025 WL 1773631 (June 27, 2025) ................*passim*

**Statutes**

5 U.S.C. § 705 ...........................................................................*passim*

5 U.S.C. § 706 ...........................................................................3, 4, 5

Judiciary Act of 1789 ....................................................................1, 2

**Other Authorities**

*Black's Law Dictionary* 1537 (4th ed. 1951) ...................................5

*Black's Law Dictionary* 1612 (3d ed. 1933) ....................................5

*Bouvier's Law Dictionary* 1103 (W. Baldwin ed. 1926) .................5

Frank Chang, *The Administrative Procedure Act's Stay Provision: Bypassing Scylla and Charybdis of Preliminary Injunctions*, 85 Geo. Wash. L. Rev. 1529, 1550 (2017) ....................................6

H.R. Rep. No. 79-1980 (1946) ..........................................................6

Mila Sohoni, *The Past and Future of Universal Vacatur*, 133 Yale L.J. 2304, 2326–27 (2024) ............................................................4

Mila Sohoni, *The Power to Vacate a Rule*, 88 Geo. Wash. L. Rev. 1121 (2020) .........................................................................4, 5, 6

S. Comm. on the Judiciary, 79th Cong., Administrative Procedure Act (Comm. Print 1945) ...................................................................6

S. Rep. No. 79-752 (1945) .................................................................5

In accordance with the Court's July 1, 2025 Order, Dkt. 39.1, Plaintiff-Appellee Immigrant Defenders Law Center ("ImmDef") submits this supplemental brief regarding the impact of the Supreme Court's decision in *Trump v. CASA, Inc.*, No. 24A884, --- S. Ct. ---, 2025 WL 1773631 (June 27, 2025) ("*CASA*"). By its own terms, *CASA*'s holding barring universal injunctions in certain cases does not apply to stays under the Administrative Procedure Act ("APA"), such as the stay issued in this case. Moreover, a border-wide stay is necessary to prevent harm to ImmDef and thus afford the plaintiff complete relief.

## I.     *Trump v. CASA* Does Not Apply to Stays under APA § 705

*CASA* does not impact this appeal or the underlying order. That decision held that the Judiciary Act of 1789 does not grant federal courts "the authority to universally enjoin the enforcement of an executive or legislative policy" unless necessary for the plaintiffs to obtain complete relief. *Id.* at *5; *id.* at *17 (Thomas, J., concurring). The appeal before this Court does not concern the scope of relief available under the Judiciary Act of 1789 or an injunction, and the holding in *CASA* thus does not apply.

The question before the Supreme Court in *CASA* was whether a universal injunction, which provides relief to parties other than those before the court, was traditionally accorded by courts of equity. There, the Court considered three "universal" injunctions entered by district courts that prohibited the enforcement of

1

Executive Order No. 14160 against anyone in the country. Authority to issue equitable remedies is authorized by the Judiciary Act of 1789, which "endowed federal courts with jurisdiction over 'all suits . . . in equity[.]'" *Id.* at *6 (citing Judiciary Act § 11, 1 Stat. 78). The Supreme Court found that the Judiciary Act's grant of authority "encompasses only those sorts of equitable remedies 'traditionally accorded by courts of equity' at our country's inception," and that "[n]either the universal injunction nor any analogous form of relief was available in the High Court of Chancery in England at the time of the founding." *Id.* (citing *Grupo Mexicano de Desarrollo, S.A. v. All. Bond Fund, Inc.*, 527 U.S. 308, 319 (1999); *Payne v. Hook*, 74 U.S. (7 Wall.) 425, 430 (1868)). Thus, the Court concluded that a universal injunction "falls outside the bounds of a federal court's equitable authority under the Judiciary Act." *Id.* at *8. The Judiciary Act only grants authority to provide "party-specific" relief, which may "only incidentally" provide benefits to non-parties. *Id.* at *11. Notably, the Court did not rule out the possibility that nationwide relief might be appropriate in the cases under consideration, leaving the lower courts to determine the scope of relief necessary to provide party-specific relief to the plaintiffs before them. *Id.* at *15.

The Supreme Court's statutory interpretation in *CASA* is irrelevant here because the stay that Appellants seek to overturn is not based on the district court's authority to grant equitable relief under the Judiciary Act. Rather, the relief granted

by the district court was expressly authorized by the APA, 5 U.S.C. § 705. Unlike injunctive relief, a stay under Section 705 of the APA is "not party-restricted." *Career Colls. & Schs. of Texas v. U.S. Dep't of Educ.*, 98 F.4th 220, 255 (5th Cir. 2024) (rejecting "the Department's arguments that general equitable and constitutional principles require the panel to limit any [APA] relief to the named parties"), *cert. granted in different part*, 145 S. Ct. 1039 (2025). Indeed, *CASA* itself confirms the distinction between injunctions and APA relief, as the Court carefully cabined its holding, noting that "nothing [the Court] say[s] today resolves the distinct question whether the [APA] authorizes federal courts to vacate federal agency action." 2025 WL 1773631, at *8 n.10 (citing 5 U.S.C. § 706(2)); *see also id.* at *19 (Kavanaugh, J., concurring) ("[I]n the wake of the Court's decision, plaintiffs who challenge the legality of a new federal statute or executive action and request preliminary injunctive relief may . . . in cases under the [APA] . . . ask a court to preliminarily 'set aside' a new agency rule.").

Because the Supreme Court's decision limiting the availability of "universal" equitable relief in *CASA* does not apply to relief under the APA, it does not impact the scope of relief available in this case.

## II.    Universal Relief under APA §§ 705 and 706 Is Consistent with Settled Caselaw and History

Through the APA, Congress expressly authorized vacatur and stays of agency actions, as well as universal relief under Sections 705 and 706. This interpretation is consistent with legislative history and with decades of precedent.

Well before the APA's enactment, litigants were able to, and did, seek broad-based pre-enforcement equitable relief against federal agencies, including as to federal rules. *See* Mila Sohoni, *The Power to Vacate a Rule*, 88 Geo. Wash. L. Rev. 1121, 1143–53 (2020) (describing several cases dating back to the 1910s where litigants sought relief from courts against federal agency action). Several laws that pre-dated the APA "authorized courts to review agency action," and to "set aside" or "suspend" agency orders. Mila Sohoni, *The Past and Future of Universal Vacatur*, 133 Yale L.J. 2304, 2326–27 (2024) (describing Congressional authority for judicial review set forth in several statutes governing agencies, passed between 1906 and 1938). A few years before passage of the APA, then-Attorney General Robert Jackson published a report on administrative procedure that contemplated judicial review of regulations, including in cases "[w]here the validity of the entire regulation is in question." Sohoni, *The Power to Vacate*, *supra*, 88 Geo. Wash. L. Rev. at 1154 (quoting Att'y Gen.'s Comm. on Admin. Procedure, Administrative Procedure in Government Agencies, S. Doc. No. 77-8 (1st Sess. 1941)). The report

went on to explain that legal arguments alone "may be all that is necessary to aid in determining the validity of a regulation, as of a statute." *Id.*

Against this backdrop, Congress, through the APA, authorized courts to "set aside" agency actions that are unlawful. 5 U.S.C. § 706(2)(A). As Justice Kavanaugh has explained, contemporary dictionaries defined "set aside" to mean "cancel, annul, or revoke." *Corner Post, Inc. v. Bd. of Governors of Fed. Rsrv. Sys.*, 603 U.S. 799, 829–30 (2024) (Kavanaugh, J., concurring) (citing *Black's Law Dictionary* 1612 (3d ed. 1933); *Black's Law Dictionary* 1537 (4th ed. 1951); *Bouvier's Law Dictionary* 1103 (W. Baldwin ed. 1926)). Likewise, appellate courts at the time frequently used the term "set aside" to mean vacatur of a lower court's judgment, and Congress used the term in pre-APA statutes to refer to "vacatur of agency actions." *See id.* at 830 (citing *Shawkee Mfg. Co. v. Hartford-Empire Co.*, 322 U.S. 271, 274 (1944)).

While the "proximate legislative history" of the APA is "limited" and does not directly address whether the statute authorized universal vacatur, "it suggests that the drafters anticipated that courts would review the validity of rules and that invalid rules could be set aside." Sohoni, *The Power to Vacate*, *supra*, 88 Geo. Wash. L. Rev. at 1154–55; *see also* S. Rep. No. 79-752 at 213 (1945) (noting that the APA "provides intermediate judicial relief for every other situation [besides a court granting a plaintiff an initial license] in order to make judicial review effective"); *Texas v. Biden*, 646 F. Supp. 3d 753, 769 (N.D. Tex. 2022) (describing § 705 stays

5

as "an interim or lesser form of vacatur"). The legislative history also clarifies that § 705 was intended to give courts power to "maintain the status quo" pending judicial review; the Senate Judiciary Committee explained that this section "authorizes courts to postpone the effective dates of administrative judgments or rules in cases in which, as by subjection to criminal penalties, parties could otherwise have no real opportunity to seek judicial review except at their peril." Sohoni, *The Power to Vacate*, *supra*, 88 Geo. Wash. L. Rev. at 1157–58 (citing S. Rep. No. 79-752, at 27 (1945); H.R. Rep. No. 79-1980, at 43 (1946); S. Comm. on the Judiciary, 79th Cong., Administrative Procedure Act (Comm. Print 1945)).

The plain text of § 705 supports this reading as well. That section provides that the reviewing court "may issue all necessary and appropriate process to postpone the effective date of an agency action *or* to preserve status or rights." 5 U.S.C. § 705 (emphasis added). Agencies form "a single policy voice" and create policy for the entire country. Frank Chang, *The Administrative Procedure Act's Stay Provision: Bypassing Scylla and Charybdis of Preliminary Injunctions*, 85 Geo. Wash. L. Rev. 1529, 1550 (2017). It therefore "seems irreconcilable with the text of § 705 ('postpone *the* effective date') for the court to create one effective date of a regulatory program in one judicial district, but another for other districts." *Id.*

Moreover, "longstanding precedent" supports the judicial power to review, including to vacate, agency rules as a whole. *Corner Post*, 603 U.S. at 830–31

(Kavanaugh, J., concurring) (collecting "countless decisions" where the Supreme Court affirmed decisions vacating agency actions). The same universal application holds true for § 705 stays: "the APA's § 705 must be read to authorize relief from agency action for any person otherwise subject to the action, not just as to plaintiffs." *D.C. v. U.S. Dep't of Agric.,* 444 F. Supp. 3d 1, 48 (D.D.C. 2020) (collecting cases).

In sum, "[t]he text and history of the APA authorize vacatur"—and stay—of agency action universally, *Corner Post*, 603 U.S. at 829 (Kavanaugh, J., concurring), if indeed they do not "compel[]" vacatur of invalid rules and other agency action. *Earth Island Inst. v. Ruthenbeck*, 490 F.3d 687, 699 (9th Cir. 2007), *aff'd in part, rev'd in part on other grounds sub nom. Summers v. Earth Island Inst.*, 555 U.S. 488 (2009).

## III. A More Limited Stay Is Impracticable and Would Not Grant ImmDef Complete Relief

If, notwithstanding the argument made in Part I, the Court were to import *CASA*'s analysis to this APA case and seek to tailor the remedy more narrowly, a complete stay of the reimplementation of the 2019 Migrant Protection Protocols (MPP) would still be necessary to afford ImmDef complete relief. Due to standard border enforcement processes, which include regular lateral transfers of noncitizens from one Border Patrol sector to another, a geographically-limited stay would be functionally impractical and would thwart ImmDef's ability to carry out its core

7

activities.[1] Maintaining the district court's stay of MPP's reimplementation across the southern border—ensuring the existence of one uniform policy across the four U.S. states bordering Mexico—is necessary to maintain the status quo, consistent with the APA, and essential to prevent ImmDef from suffering irreparable harm.

The U.S. government has used lateral flights (which transport people from one part of the border to another) to manage the flow of noncitizens at the border for almost twenty years. Beginning in 2003, the government used the practice primarily on Mexican citizens, but by 2019, it began using lateral flights for Central Americans.[2] This increased significantly while the U.S. government implemented Title 42 during the COVID-19 pandemic starting in 2020.[3] In 2021 alone, the U.S. government used 221 lateral flights to move more than 22,000 noncitizens from the Rio Grande Valley in Texas to other Border Patrol sectors, including El Paso, San Diego, and Tucson.[4] Lateral transfers were used for some noncitizens enrolled in

---

[1] Stephanie Leutert et al., *Lateral Expulsion Flights Along the Border*, The Strauss Center, at 4 (Apr. 2022), https://www.strausscenter.org/wp-content/uploads/Lateral_Flights_April_2022.pdf.

[2] *Id.*

[3] *Id.* Title 42 refers to the statutory authority the U.S. government relied on to expel noncitizens during and for some time after the COVID-19 pandemic.

[4] *Id.* at 5. During Title 42, when one state in Mexico prohibited the expulsion of families with young children to that state, CBP responded by "carr[ying] out 'lateral' transfers by plane or bus to other locations along the border . . . where Mexican authorities w[ould] allow the agency to expel families with young children." American Immigration Council, *A Guide to Title 42 Expulsions at the Border* (May 2022), https://www.americanimmigrationcouncil.org/fact-sheet/guide-title-42-expulsions-border.

MPP.[5] Indeed, Customs and Border Protection (CBP) has reserved the right to transfer noncitizens to other Border Patrol sectors before they are processed if "the circumstances warrant,"[6] and the U.S. government has invested in "increas[ing] CBP's air transportation capacity for the lateral transfer of noncitizens to less crowded Border Patrol Sectors during surges."[7]

ImmDef provides direct representation, counseling, and legal assistance to noncitizens in removal proceedings in and around southern California—which includes individuals in MPP. *See* ECF No. 379 at 1–3; ECF No. 200-1 ¶¶ 24, 271–72; ECF No. 371-3 ("Toczylowski Decl.") ¶¶ 2, 5; ECF No. 371-4 ("Cargioli Decl.") ¶¶ 3, 16; ECF No. 405 at 12. ImmDef's services are not dependent on a noncitizen's port of entry or the Border Patrol sector where they were processed, but instead where their immigration case is docketed. Toczylowski Decl. ¶¶ 9–10. Accordingly, given DHS's use of lateral transfers—including during the prior implementation of

---

[5] American Immigration Council, *The "Migrant Protection Protocols": An Explanation of the Remain in Mexico Program*, at 3 (Feb. 2024), https://www.americanimmigrationcouncil.org/wp-content/uploads/2025/01/migrant_protection_protocols_2024.pdf.

[6] Julia Ainsley, *Biden admin again flying migrants who cross border in one place to another place before expelling them*, NBC News (June 18, 2021), https://www.nbcnews.com/politics/immigration/biden-admin-again-flying-migrants-who-cross-border-one-place-n1271211.

[7] Dep't of Homeland Security, *Resource Guide: Southwest Border Coordination Center Migration Information Center*, at 5 (May 26, 2023), https://www.dhs.gov/sites/default/files/2023-07/23_0712_SBCC_resource-guide_v2_revised.pdf.

9

MPP—a stay of MPP's reimplementation that is not border-wide would harm ImmDef's ability to access clients and prospective clients.

Accordingly, two central points weigh strongly against a geographical restriction of the district court's stay. First, the location of CBP processing, not actual crossing location, is determinative of which border-security "processing pathway" (such as MPP) is assigned to a particular border-crosser. The extent of lateral transfers described above therefore means that someone who crosses in the Ninth Circuit may well be processed elsewhere along the border beyond the stay's geographic reach. This effective end-run around the stay would deprive ImmDef of future clients. Individuals who cross the border or present at a port of entry in California, who would otherwise be processed and docketed for MPP proceedings in southern California—where ImmDef would be able to meet, consult with, and potentially represent them—could instead be transferred to a jurisdiction outside the scope of the stay and outside ImmDef's service area, enrolled into MPP there, and then returned to Mexico. Second, noncitizens who cross the border or present at a port of entry in a jurisdiction not covered by the stay, but who would have otherwise been transferred *to* southern California, enrolled in MPP, docketed in the San Diego immigration court, and then able to access ImmDef's services, could now be kept out of ImmDef's reach. Because border "decompression" efforts by CBP include transferring many individuals from outside the circuit into ImmDef's service area,

these individuals would also lack protection from a stay limited to Ninth Circuit border-crossers, so MPP could still be implemented within the circuit absent a four-state stay.

In both circumstances, transfers out of and into the Circuit, ImmDef would be denied access to individuals whom it would have otherwise served and represented. DHS may claim that ImmDef's "contention that the Government would escape a geographically limited order by transferring *all* [noncitizens] subject to MPP to other immigration courts [ ] is far-fetched," but the tens of thousands of noncitizens that the government transferred laterally in 2021 alone suggest otherwise. Dkt. 29.1 at 11–12 (emphasis in original).

In short, Defendants' past statements that they reserve the right to resume lateral flights highlight the impracticability of a geographically-limited stay to grant ImmDef relief and fully "preserve status or rights pending conclusion of the" proceedings. 5 U.S.C. § 705.

A border-wide stay of the reimplementation of MPP, which practically impacts only four states, is clearly lawful under the APA, which contemplates postponing an agency action in full "pending judicial review." 5 U.S.C. § 705; *see Career Colls.*, 98 F.4th at 255. It is also necessary to provide ImmDef complete relief, if the Court opts to apply the Supreme Court's reasoning in *CASA* to the APA context. As the Court observed in *East Bay Sanctuary Covenant v. Garland*,

11

although the District Court directed relief to be "nationwide" in scope, because the policy only impacts the southern border, the order "affects the government's actions in only four states within three circuits: California and Arizona (Ninth Circuit), New Mexico (Tenth Circuit), and Texas (Fifth Circuit)." 994 F.3d 962, 985–86 (9th Cir. 2020).

Defendants, both in briefing and at the June 24, 2025 oral argument, have proposed limiting the stay to ImmDef's clients. *See* ECF No. 378 at 25. This limitation is utterly unworkable. MPP enrollment occurs when a noncitizen is processed after crossing the border—before ImmDef even has an opportunity to meet, interview, or sign a representation agreement with the individual. *See, e.g.*, ICE, Memorandum from Ronald D. Vitiello, Deputy Director and Senior Official Performing the Duties of the Director, Implementation of the Migrant Protection Protocols (Feb. 12, 2019), https://www.ice.gov/sites/default/files/documents/Fact%20sheet/2019/ICE-Policy-Memorandum-11088-1.pdf. Thus, ImmDef's encounters with clients subjected to MPP happen only after they have been enrolled in MPP. As a result of MPP's extremely limited reimplementation before the stay, ImmDef does not currently have clients subjected to the reimplementation of MPP, so a stay limited to ImmDef's current clients would be a nullity. And any proposed stay limited to future ImmDef clients would similarly fail to provide ImmDef relief: as ImmDef would generally

12

encounter individuals only *after* they have been enrolled in MPP, Defendants would have to disenroll ImmDef clients from MPP in order to comply with the stay. This would undoubtedly increase the demand on ImmDef's hotline and services, as ImmDef's representation would be the only avenue to avoid the perils of MPP.

If the Court does narrow the stay in any way, ImmDef respectfully requests a remand to the District Court to consider appropriate reporting requirements regarding Defendants' compliance with the stay.

## CONCLUSION

The Court should deny Defendants-Appellants' Emergency Motion for a Stay Pending Appeal.

Respectfully submitted,

Dated:  July 7, 2025

By:   */s/ Hannah R. Coleman*

| | |
|---|---|
| Steven L. Mayer | Hannah R. Coleman |
| Sean M. SeLegue | Matthew T. Heartney |
| ARNOLD & PORTER | Daniel S. Shimell |
| KAYE SCHOLER LLP | Allyson C. Meyers |
| Three Embarcadero Center, 10th Floor | ARNOLD & PORTER KAYE |
| San Francisco, CA 94111 | SCHOLER LLP |
| (415) 356-3000 | 777 South Figueroa Street, 44th Fl. |
| | Los Angeles, CA 90017 |
| | (213) 243-4000 |
| | |
| Kathleen X. Weng | Melissa Crow |
| ARNOLD & PORTER KAYE | CENTER FOR GENDER & |
| SCHOLER LLP | REFUGEE STUDIES |
| 601 Massachusetts Avenue, N.W. | 1121 14th Street, NW, Suite 200 |
| Washington, DC 20001 | Washington, DC 20005 |

(202) 942-5000

(202) 355-4471

Dulce Rodas
Edith Sangüeza
CENTER FOR GENDER &
REFUGEE STUDIES
200 McAllister Street
San Francisco, CA 94102
(415) 581-8843

Stephanie M. Alvarez-Jones
Victoria F. Neilson
NATIONAL IMMIGRATION
PROJECT OF THE NATIONAL
LAWYERS GUILD
1763 Columbia Road NW
 Suite 175 #896645
Washington, DC 20009
(202) 470-2082

Stephen W. Manning
Jordan Cunnings
Kelsey Provo
Tess Hellgren
Rosa Saavedra Vanacore
INNOVATION LAW LAB
333 SW 5th Ave, Suite 200
Portland, OR 97204
(503) 922-3042

*Attorneys for Plaintiff-Appellee*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on July 7, 2025, I caused the foregoing brief to be electronically filed using the CM/ECF system. I certify that counsel for the parties are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

Dated:  July 7, 2025

*/s/ Hannah R. Coleman*

Hannah R. Coleman

## <u>CERTIFICATE OF COMPLIANCE</u>

This brief complies with the length limitation of the Court's Order (Dkt. 39.1) because the brief contains 2,995 words, excluding the parts of the brief exempted from the length limitation. This brief complies with the typeface and type style requirements of Fed. R. App. P. 32(a)(5) and 32(a)(6), respectively, because this brief has been prepared in a proportionately spaced typeface using Microsoft Word for Office 365 in Times New Roman 14-point font.

Dated:  July 7, 2025                                  */s/ Hannah R. Coleman*
                                                        Hannah R. Coleman