No. 25-2581

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

———————————————

IMMIGRANT DEFENDERS LAW CENTER,

*Plaintiff-Appellee*,

v.

KRISTI NOEM, et al.,

*Defendants-Appellants.*

———————————————

On Appeal from the United States District Court for the
Central District of California
No. 2:20-cv-09893 (Hon. Jesus G. Bernal)

———————————————

## PLAINTIFF-APPELLEE IMMIGRANT DEFENDERS
## LAW CENTER'S RESPONSE TO PETITION FOR
## REHEARING EN BANC

———————————————

Matthew T. Heartney
Hannah R. Coleman
Daniel S. Shimell
Allyson C. Myers
ARNOLD & PORTER
KAYE SCHOLER LLP
777 South Figueroa Street, 44th Fl.
Los Angeles, CA 90017
(213) 243-4000

*Counsel for Plaintiff-Appellee Immigrant Defenders Law Center*
*(continued on next page)*

Steven L. Mayer
Sean M. SeLegue
ARNOLD & PORTER
KAYE SCHOLER LLP
Three Embarcadero Center, 10th Fl.
San Francisco, CA 94111
(415) 356-3000

Kathleen X. Weng
ARNOLD & PORTER
KAYE SCHOLER LLP
601 Massachusetts Avenue, N.W.
Washington, D.C. 20001
(202) 942-5000

Melissa Crow
CENTER FOR GENDER &
REFUGEE STUDIES
1121 14th Street, NW, Suite 200
Washington, D.C. 20005
(202) 355-4471

Dulce Rodas
Edith Sangüeza
CENTER FOR GENDER &
REFUGEE STUDIES
200 McAllister Street
San Francisco, CA 94102
(415) 581-8843

Stephanie M. Alvarez-Jones*
Victoria F. Neilson†
NATIONAL IMMIGRATION PROJECT
OF THE NATIONAL LAWYERS GUILD
1763 Columbia Road NW
Suite 175 #896645
Washington, D.C. 20009
(202) 470-2082

Stephen W. Manning
Jordan Cunnings
Kelsey Provo
Tess Hellgren
Rosa Saavedra Vanacore
INNOVATION LAW LAB
333 SW 5th Ave, Suite 200
Portland, OR 97204
(503) 922-3042

*Counsel for Plaintiff-Appellee Immigrant Defenders Law Center*

\* *not admitted in DC; working remotely from and admitted in Georgia only*
† *not admitted in DC; working remotely from and admitted in New York only*

# <u>TABLE OF CONTENTS</u>

**Page**

INTRODUCTION ..................................................................................................1

BACKGROUND ..................................................................................................2

ARGUMENT ......................................................................................................4

    I.    DEFENDANTS DO NOT DEMONSTRATE GROUNDS FOR EN BANC REVIEW. ......................................................................................4

    II.    THE PETITION FAILS TO STATE AN ISSUE REGARDING 8 U.S.C. § 1252(f)(1) APPROPRIATE FOR EN BANC REVIEW. ......7

    III.    THE PETITION FAILS TO STATE ANY BASIS FOR EN BANC REVIEW OF THE PANEL'S DETERMINATION THAT THE REIMPLEMENTATION OF MPP 1.0 WAS FINAL AGENCY ACTION. ...........................................................................................10

    IV.    THE ORDER DID NOT "NULLIFY" THE GOVERNMENT'S STATUTORY CONTIGUOUS-TERRITORY-RETURN AUTHORITY, BUT ONLY ALLOWED A LIMITED STAY OF REIMPLEMENTATION OF MPP 1.0 TO REMAIN IN EFFECT...15

    V.    THE PANEL DID NOT "DISREGARD" THE SUPREME COURT'S DECISIONS IN *WOLF V. INNOVATION LAW LAB* OR *BIDEN V. TEXAS*...................................................................................17

CONCLUSION ..................................................................................................19

i

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*California ex rel. Becerra v. Azar*,
　950 F.3d 1067 (9th Cir. 2020) ................................................................6

*Bennett v. Spear*,
　520 U.S. 154 (1997)..............................................................................11

*Biden v. Texas*,
　597 U.S. 785 (2022)........................................................................*passim*

*California v. Arizona*,
　452 U.S. 431 (1981)..............................................................................10

*Direct Mktg. Ass'n v. Brohl*,
　575 U.S. 1 (2015)..................................................................................10

*E. Bay Sanctuary Covenant v. Biden*,
　993 F.3d 640 (9th Cir. 2021) ................................................................6

*Franklin v. Massachusetts*,
　505 U.S. 788 (1992)..............................................................................12

*Garland v. Aleman Gonzalez*,
　596 U.S. 542 (2022)..............................................................................13

*Kidd v. Mayorkas*,
　734 F. Supp. 3d 967 (C.D. Cal. 2024) ..................................................9

*KOLA, Inc. v. United States*,
　882 F.2d 361 (9th Cir. 1989) ................................................................8

*Nat'l TPS All. v. Noem*,
　773 F. Supp. 3d 807 (N.D. Cal. 2025), *aff'd*, No. 25-2120, 2025
　WL 2487771 (9th Cir. Aug. 29, 2025) ..................................................9

*Nken v. Holder*,
　556 U.S. 418 (2009)................................................................................9

*Orantes-Hernandez v. Thornburgh*,
  919 F.2d 549 (9th Cir. 1990) ................................................................16

*Oregon Nat. Desert Ass'n v. U.S. Forest Serv.*,
  465 F.3d 977 (9th Cir. 2006) ...............................................................12

*Prutehi Litekyan: Save Ritidian v. U.S. Dep't of Airforce*,
  128 F.4th 1089 (9th Cir. 2025) ...........................................................12

*Sackett v. EPA*,
  566 U.S. 120 (2012) ..............................................................................8

*Texas v. United States*,
  40 F.4th 205 (5th Cir. 2022) ................................................................8

*Trump v. CASA, Inc.*,
  145 S. Ct. 2540 (2025) ..........................................................................9

*Wolf v. Innovation Law Lab*,
  140 S. Ct. 1564 (2020) ...............................................................17, 18

**Statutes**

5 U.S.C. § 705 ...........................................................................*passim*

8 U.S.C. § 1225(b)(2)(C) ...................................................2, 10, 16

8 U.S.C. § 1252(f)(1) ...............................................................7, 8, 9, 10

**Rules**

Fed. R. App. P. 40(b)(2) ...........................................................*passim*

**Regulations**

8 C.F.R. § 235.3(d) ................................................................................16

**Other Authorities**

Bryan A. Garner, Garner's Dictionary of Legal Usage
  295–96 (3d ed. 2011) ..........................................................................16

iii

# INTRODUCTION

In the action below, Plaintiff-Appellee Immigrant Defenders Law Center ("ImmDef") moved under the Administrative Procedure Act to stay the decision of the Department of Homeland Security ("DHS") to reimplement the 2019 Migrant Protection Protocols ("MPP 1.0") pending resolution of ImmDef's challenge to MPP 1.0. *See* 5 U.S.C. § 705 (APA interim stay provision). MPP 1.0 requires non-Mexican asylum seekers who cross the southern border to remain in Mexico pending adjudication of their immigration cases. In an interim ruling, the district court stayed reimplementation of MPP 1.0, pending its resolution of the underlying litigation. App.2_031–032.

Defendants appealed and moved for an emergency stay pending appeal of the district court stay. The panel largely granted Defendants' motion (the "Order"), staying the district court stay except for current and future clients of ImmDef, which provides legal representation to noncitizens in removal proceedings in and around Southern California. Despite largely prevailing on their motion, Defendants now seek en banc review of the Order, something that—to the best of ImmDef's knowledge—this Court has done only once before.

Defendants do not even attempt to make the classic showing necessary to obtain en banc review—a conflict in this Court's decisions, a circuit split, or conflict with Supreme Court decisions (FED. R. APP. P. 40(b)(2)(A), (B), (C))—except for a

baseless claim that the Order ignored two prior Supreme Court rulings about MPP. Defendants instead assert that the motion ruling presents one or more issues of "exceptional importance." FED. R. APP. P. 40(b)(2)(D). Yet Defendants' petition ("Petition") never backs that up, instead asserting only that the Order contains errors, without explaining why those errors meet the "exceptionally important" standard.

Several other practical factors weigh against en banc review. First, the Order will remain in place only until the pending adjudication of Defendants' appeal on its merits. That appeal is fully briefed, argued, and ready for adjudication. Second, as already noted, the Order permits reimplementation of MPP 1.0 to everyone except ImmDef's current and future clients. Third, based on the limited information Defendants have divulged, it appears that the reimplemented MPP 1.0 has been applied to only a few people, as discussed further below.

Defendants' Petition for Rehearing En Banc should be denied.

## BACKGROUND

In January 2019, DHS invoked its hitherto sparingly used authority under 8 U.S.C. § 1225(b)(2)(C) to return, over the next two years, nearly 70,000 asylum seekers to Mexico to await their immigration court hearings. 1-ER-7.

The district court found that "[i]n Mexico, [ImmDef's] MPP [1.0] clients faced extraordinary risks to their personal safety; some were kidnapped, tortured,

raped, sexually and/or physically assaulted, and had no meaningful shelter access while waiting for their hearings." App.2_029. According to a DHS analysis upon which the panel relied in its Order, *see* App.1_032, MPP 1.0 was characterized by "numerous structural flaws ... including concerns about the non-refoulement process, fairness and reliability of proceedings, notice of hearings, and disparate impact on court appearance rates and outcomes." 1-ER-27. Accordingly, MPP 1.0 severely obstructed legal representation for asylum seekers subjected to the policy. While overall 80% of asylum seekers appearing in immigration court had legal representation, only 10% of individuals in MPP 1.0 obtained representation.[1] In 2021, DHS described "the difficulties in accessing counsel" in MPP 1.0 as "endemic to the program's design," finding that "[o]pportunities for attorneys to meet with their clients outside of those organized at the hearing locations were limited due to, among other constraints, complications associated with cross-border communication." 2-ER-238, 252, 256 (DHS Explanation Memo). DHS concluded that "[i]nadequate access to counsel cast[] doubt on the reliability of removal proceeding[s]" during MPP 1.0. 2-ER-252.

---

[1]    2-ER-188    nn.6-7    (citing    TRAC,    Asylum    Decisions, https://web.archive.org/web/20250101084914/https://trac.syr.edu/phptools/immigration/asylum/ (filters set to "Immigration Court" and "Represented," representing the total number of cases in immigration court as of August 2024; TRAC Immigration, Details on MPP (Remain in Mexico) Deportation Proceedings (Oct. 2021), https://web.archive.org/web/20211129165045/https://trac.syr.edu/phptools/immigration/mpp/ (filters set to "Hearing Location: All" and "Represented: Represented").

When they reimplemented MPP 1.0 in 2025, Defendants replicated the program's structural flaws, including inadequate access to counsel. Accordingly, ImmDef brought an ex parte application pursuant to APA Section 705 to stay MPP 1.0's reimplementation pending trial court completion of ImmDef's challenge to the program.. The district court granted the stay, recognizing that the reimplementation of MPP 1.0 "demonstrate[d] [an] immediate threatened injury" to ImmDef, and that ImmDef was "likely to suffer irreparable harm." App.2_029 (internal quotation marks omitted).

Defendants appealed the district court's stay order and moved this Court for an emergency stay pending appeal. After hearing oral argument, the panel largely granted the motion, leaving the district court's stay in place only as to ImmDef's "current and future clients." App.1_038–039. Despite having largely prevailed, Defendants now seek en banc review of the Order.

In the meantime, however, the merits appeal has proceeded apace. Oral argument was held on August 21, 2025. Since the panel has expedited this appeal, it is reasonable to expect that a decision will be forthcoming shortly.

## ARGUMENT

## I.  DEFENDANTS DO NOT DEMONSTRATE GROUNDS FOR EN BANC REVIEW.

Defendants do not contend that the Order conflicts with any Supreme Court precedent, the decision of any other Court of Appeals, or any prior decision by this

Court.  True, they contend that the panel's ruling did not take account of two prior Supreme Court decisions, but this assertion is incorrect because the panel expressly considered both Supreme Court decisions.  *See* Part V, *infra*.  Moreover, Defendants did not heed Rule 40's admonition to "begin with a statement" specifying exactly why the case warrants en banc review.  *See* FED. R. APP. P. 40(b)(2).  Their silence speaks volumes.

Defendants assert that the proceeding involves one or more questions of "exceptional importance" (Pet. 15), although they fail at the outset of the Petition to identify "concisely" exactly what those issues are.  *See* FED. R. APP. P. 40(b)(2)(D).  Instead, the Petition claims that en banc review should be granted because "the panel erred at each step of its analysis."  Pet. 3.  But this contention only (and mistakenly) states that the panel's stay decision contains errors.  That claim falls far short of showing that the Petition presents issues of such exceptional importance that the Court should take the extraordinary step of undertaking en banc review of a motion ruling that partially—indeed, mostly—granted Defendants' own stay motion.

Defendants seek to bridge the gap between their showing and the standards for en banc review by accusing the district court of participating in a "trend of district courts emboldened to ignore the Supreme Court's decisions" and "rebel[ling]" against the Supreme Court.  Pet. 2.  Such unsupported accusations cannot substitute

for the required showing that the Order presents legal issues so exceptional the Court should reconsider the Order en banc.

Further, the Petition asks the Court to take a *motion* order en banc, which itself is extraordinary. ImmDef has identified only one case in which this Court has taken a motion ruling en banc, and that ruling was moot by the time the en banc panel decided the merits. *See California ex rel. Becerra v. Azar*, 950 F.3d 1067, 1082 n.10 (9th Cir. 2020) (en banc). That is unsurprising given the ephemeral nature of stay orders and this Court's recognition that rulings on stay motions have limited precedential effect. *See E. Bay Sanctuary Covenant v. Biden*, 993 F.3d 640, 661 & n.3 (9th Cir. 2021) (merits panel not bound by motion panel's assessment of likelihood of success on the merits; "[s]uch a predictive analysis should not, and does not, forever decide the merits of the parties' claims") (internal quotation marks omitted).

Defendants also ignore practical reasons why en banc review of the Order makes no sense. For example, the panel allowed the district's court nationwide stay to remain in effect pending appeal only as to ImmDef's "current and future clients." App.1_039. MPP 1.0 remains available for all other noncitizens. *Id.* In addition, the panel heard oral argument on the merits on August 21, 2025. Given the panel's prior decision to expedite this appeal, a decision on the merits will likely be issued

well before en banc argument could take place, much less issuance of an en banc decision.

Moreover, although Defendants claim that the panel's decision "eliminate[s] an important tool for securing the border" (Pet. 15), the facts indicate otherwise. To begin with, the panel decision permits MPP's reimplementation as to everyone except ImmDef's "current and future" clients. App.1_039. And despite repeated requests at oral argument, both in the district court and before this Court, Defendants have been unable to state how many people have been subjected to the reimplemented MPP 1.0, other than a statement by counsel in the district court that, as of March 31, 2025, it had been "used on a limited basis." 2-ER-109 n.3; 4-ER-681:15–16. In addition, implementation of MPP requires consent from the Government of Mexico, *see* App.1_045, and nothing in the record indicates that such consent exists. Accordingly, Defendants cannot claim that the issues their Petition presents require en banc review.

## II. THE PETITION FAILS TO STATE AN ISSUE REGARDING 8 U.S.C. § 1252(f)(1) APPROPRIATE FOR EN BANC REVIEW.

The panel held that 8 U.S.C. § 1252(f)(1), which removes "jurisdiction or authority" of courts, other than the Supreme Court, to "enjoin or restrain the

operation" of certain provisions of the INA,[2] did not bar the district court from entering a stay under 5 U.S.C. § 705. In its effort to establish grounds for en banc review, the Petition does not accurately summarize the panel's reasoning and, for that reason alone, fails to establish grounds for en banc review. The Petition ignores the panel's reasoning that "there is a 'strong presumption ... that the actions of federal agencies are reviewable in federal court.'" App.1_026 (quoting *KOLA, Inc. v. United States*, 882 F.2d 361, 363 (9th Cir. 1989)). It likewise ignores the panel reliance on Supreme Court authority that "'[t]he APA ... creates a presumption favoring judicial review of administrative action.'" *Id.* (quoting *Sackett v. EPA*, 566 U.S. 120, 128 (2012)).

Further, the Petition fails to mention that the panel *agreed* with a Fifth Circuit decision, *see* App.1_028 (citing *Texas v. United States*, 40 F.4th 205, 219 (5th Cir. 2022)), which also held that Section 1252(f)(1) does not apply to APA stays. Indeed, to ImmDef's knowledge, no court has *ever* applied Section 1252(f)(1) to a Section 705 stay; rather, every court to address the issue (in addition to the Fifth Circuit) has

---

[2] Section 1252(f)(1) provides: "Regardless of the nature of the action or claim or of the identity of the party or parties bringing the action, no court (other than the Supreme Court) shall have jurisdiction or authority to enjoin or restrain the operation of the provisions of part IV of this subchapter, as amended by the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, other than with respect to the application of such provisions to an individual [noncitizen] against whom proceedings under such part have been initiated."

held that Section 1252(f)(1) does *not* apply to APA relief. *See, e.g.*, *Kidd v. Mayorkas*, 734 F. Supp. 3d 967, 986 (C.D. Cal. 2024) ("[T]he Court can issue declaratory relief—which is not precluded by § 1252(f)—and also vacate and set aside Defendants' unlawful policies and training materials under the APA[.]"); *see also Nat'l TPS All. v. Noem*, 773 F. Supp. 3d 807, 826–28 (N.D. Cal. 2025) (collecting cases), *aff'd*, No. 25-2120, 2025 WL 2487771 (9th Cir. Aug. 29, 2025); *see also Trump v. CASA, Inc.*, 145 S. Ct. 2540, 2554 n.10 (2025) (declining to address the issue).

What relevant argument the Petition provides falls woefully short of establishing a basis for en banc review. Defendants accept the panel's conclusion that a "stay operates against a source of legal authority to take an action, suspending the authority, while a preliminary injunction operates by 'directing an actor's conduct.'" Pet. 10–11 (quoting *Nken v. Holder*, 556 U.S. 418, 428 (2009)); App.1_027–028 (substantially the same). And Defendants do not contest that Section 1252(f)(1) mentions only injunctions ("enjoin"), not stays. Defendants therefore claim that the trial court's APA stay was actually an injunction.

To that end, Defendants claim that the stay "did not suspend any legal authority" (as would a stay) but instead "barred an action: resuming the on-the-ground implementation of MPP" (as would an injunction). Pet. 11. Defendants are wrong: the district court's order suspended reimplementation of the MPP 1.0 policy,

which was a source of authority for DHS personnel to, among other things, limit pre-hearing attorney-client consultations to one hour, something not found in Section 1225(b)(2)(C)'s contiguous-territory return provision.

And, crucially, the district court's order did not enjoin or restrain operation *of a statute* that falls within Section 1252(f)(1)'s scope and therefore was not relief that Section 1252(f)(1) prohibits. In particular, the district court's stay did not "restrain" operation of Section 1225(b)(2)(C), as Defendants have claimed. The stay operated only on reimplementation of MPP 1.0, not DHS's authority in general under Section 1225(b)(2)(C).[3]

## III. THE PETITION FAILS TO STATE ANY BASIS FOR EN BANC REVIEW OF THE PANEL'S DETERMINATION THAT THE REIMPLEMENTATION OF MPP 1.0 WAS FINAL AGENCY ACTION.

The panel correctly determined that "[t]he 2019 version of MPP and its 2025 reimplementation each constituted final agency action" subject to APA review. App.1_029. An agency action is final if it meets two conditions: (1) it "must mark

---

[3] Defendants place undue weight on the word "restrain" in Section 1252(f)(1), failing to consider context. The phrase "restrain and enjoin" is a "common doublet" referring to the most common forms of injunctive relief: injunctions and restraining orders. BRYAN A. GARNER, GARNER'S DICTIONARY OF LEGAL USAGE 295–96 (3d ed. 2011); *see, e.g.*, *California v. Arizona*, 452 U.S. 431, 432 (1981) (using "enjoined and restrained" to describe an injunction); *Direct Mktg. Ass'n v. Brohl*, 575 U.S. 1, 12–14 (2015) (rejecting a "broad definition" of the term "restrain" in the Tax Injunction Act and instead adopting a "narrower definition" as a "term[] of art in equity"). Thus, the statute's use of the word "restrain" does not, as Defendants have argued, expand the statute's scope beyond injunctions.

the consummation of the agency's decisionmaking process" and "must not be of a merely tentative or interlocutory nature;" and (2) "the action must be one by which rights or obligations have been determined, or from which legal consequences will flow." *Bennett v. Spear*, 520 U.S. 154, 177–78 (1997) (internal quotation marks and citation omitted). The panel concluded implementation of MPP 1.0 in 2019 and its reimplementation in 2025 each constituted final agency actions because "those actions had an actual or immediately threatened effect on both ImmDef and the population it serves" and the actions "marked the consummation of the current DHS's decisionmaking process, as DHS staff were bound to implement MPP across the southern border." App.1_029 (citation and internal quotation marks omitted).

Defendants do not dispute the panel's conclusion that the reimplementation of MPP 1.0 "had an actual or immediately threatened effect on both ImmDef and the population it serves." *Id.* They instead argue that the decision to reimplement MPP 1.0 was not a "consummation of the agency's decisionmaking process" for two reasons. Pet. 13. First, based on a strained reading of the panel's reference to "the Trump administration," Defendants argue the decision to reimplement MPP 1.0 was a decision made by the President, and "his actions are not subject to APA review." *Id.* Second, Defendants argue that there "could not have been 'a deliberate decision to reinstate MPP'" because MPP "had never been discontinued—and merely

11

continuing an existing program does not amount to final agency action." *Id.* at 14. Both of these arguments fail.

First, DHS's January 2025 announcement that MPP 1.0 would be reimplemented was a final decision by DHS. Whether an agency action is final "must be interpreted in a pragmatic and flexible manner." *Oregon Nat. Desert Ass'n v. U.S. Forest Serv.*, 465 F.3d 977, 982 (9th Cir. 2006). DHS's decision to restart a program is indisputably agency action. *Prutehi Litekyan: Save Ritidian v. U.S. Dep't of Airforce*, 128 F.4th 1089, 1107 (9th Cir. 2025) (agency action includes "'nearly every statement an agency may make'" (citation omitted). While Defendants point out that an executive order is not agency action subject to APA review, that proves nothing: Plaintiffs do not challenge the January 20, 2025 executive order, nor did the panel rely on that executive order as the final agency action. Rather, the relevant agency action was DHS's decision to reimplement MPP 1.0, publicized through the agency's announcement. *See* App.1_30; *see also Franklin v. Massachusetts*, 505 U.S. 788, 797 (1992) ("The core question is whether the agency has completed its decisionmaking process, and whether the result of that process is one that will directly affect the parties."); *Prutehi Litekyan*, 128 F.4th at 1110.

Second, DHS's decision to reimplement MPP 1.0 in January 2025 was not merely the continuation of an existing program. Per the Supreme Court, DHS's October 2021 rescission of MPP was final agency action. *Biden v. Texas*, 597 U.S.

12

785, 808–09 (2022). District Judge Kacsmaryk stayed that agency action under APA Section 705 but specifically noted that the stay did not "'order federal officials to take or refrain from taking actions to enforce, implement, or otherwise carry out the specified statutory provisions.'" *Texas v. Biden*, 646 F. Supp. 3d 753, 767, 769 (N.D. Tex. 2022) (quoting *Garland v. Aleman Gonzalez*, 596 U.S. 543, 550 (2022)). From the date of that decision until announcement of the reimplementation of MPP 1.0 in January 2025, the October 2021 rescission may have been stayed, but MPP was not in effect.

Proceedings in the Northern District of Texas case confirm that MPP 1.0 was not in effect in January 2025 prior to DHS's reimplementation decision. For example, on January 22, 2025, Judge Kacsmaryk ordered the parties to submit briefing in light of "DHS's policy change," recognizing that the reimplementation represented new DHS policy, not continuation of an existing policy. *See* Order, *Texas v. Biden*, No. 2:21-CV-67-Z, ECF No. 207 (N.D. Tex. Jan. 22, 2025). To the extent that any form of MPP was in place, it was not MPP 1.0 but the "MPP 2.0" policy, governed by DHS's December 2, 2021 "Guidance regarding the Court-Ordered Reimplementation of the Migrant Protection Protocols." MPP 1.0 was not an "on-going program or policy" between 2021 and early January 2025, as DHS's own January 2025 announcement explains: it said there that the agency was "resuming implementation of the 2019 MPP Policy"—MPP 1.0—and that the

13

program previously could not be "restart[ed]," which necessarily implies it was not in effect before.[4]  The panel correctly concluded that the Texas district court's "stay order under § 705 did not set aside or vacate the final agency action [considered by that court, namely the October 2021 rescission memos]."  App.1_030.  "Accordingly, the second Trump administration's reimplementation of MPP constituted a reversal of the previous final administrative action and was a deliberate decision to reinstitute Remain in Mexico."  *Id*.

Not only do Defendants fail to show mere error in the panel's final agency action ruling, but they fail to show this fact-specific issue has any broader significance.  As with all of the other issues Defendants raise, they do not contend that the panel's decision conflicts with any other decision from this Circuit or any other Circuit, including with the district court proceedings in the Northern District of Texas, which—as noted above—recognized that the reimplementation of MPP was a policy change.  The dissenting opinion also "took no position at this stage" regarding the panel's conclusion that the reimplementation decision was final

---

[4] *See Texas v. Biden*, No. 2:21-CV-00067-Z (N.D. Tex.), ECF 205, at 4 (N.D. Tex. Oct. 6. 2023) (DHS acknowledging that "[b]ecause the United States cannot unilaterally return noncitizens to Mexico under MPP without Mexico's consent, their withdrawal of consent renders restarting MPP impossible"); *see also* DHS Press Release, "DHS Reinstates Migrant Protection Protocols, Allowing Officials to Return Applicants to Neighboring Countries" (Jan. 21, 2025), https://www.dhs.gov/news/2025/01/21/dhs-reinstates-migrant-protection-protocols ("[T]he facts on the ground 'render[ed] restarting MPP impossible.'").

14

agency action.  *See* App.1_048 n.4.  In sum, there is no reason for the Court to reconsider the panel's conclusions en banc.

**IV.  THE ORDER DID NOT "NULLIFY" THE GOVERNMENT'S STATUTORY CONTIGUOUS-TERRITORY-RETURN AUTHORITY, BUT ONLY ALLOWED A LIMITED STAY OF REIMPLEMENTATION OF MPP 1.0 TO REMAIN IN EFFECT.**

The Petition incorrectly asserts that the Order held "that the statutory right to counsel and the statutory right to apply for asylum override the statutory contiguous-territory-return authority."  Pet. 15; *see also id.* (panel opinion "effectively nullif[ied] the government's statutory authority to return aliens to Mexico to await resolution of their removal proceedings").  There is no such statement in the Order.  Instead, the panel recognized that it needed to harmonize three provisions of the INA: (1) noncitizens' right to apply for asylum; (2) their right to be represented by counsel in doing so; and (3) the government's contiguous-territory-return authority.  App.1_035.  And the panel correctly noted that "ImmDef does not challenge the legality of contiguous-territory return in general."  *Id.*  Accordingly, the Petition's claim that the government's contiguous-territory-return authority has been "eliminate[d]" is unfounded.

Rather, the panel held that ImmDef is likely to prevail on its claim that the reimplementation of MPP 1.0 violates the statutory rights to asylum and counsel based on particular facts related to MPP 1.0.  On the right to counsel, the panel relied on existing Circuit precedent for the proposition that "noncitizens' 'fundamental'

15

right to counsel 'must be respected in substance as well as in name.'"  App.1_033 (quoting *Orantes-Hernandez v. Thornburgh*, 919 F.2d 549, 544 (9th Cir. 1990)). The panel explained that, in *Orantes-Hernandez*, the very same types of conditions at issue here violated the right to counsel for noncitizens in immigration detention:

- Noncitizens "'were frequently detained far from where potential counsel or existing counsel were located;'"

- "[N]oncitizens experienced 'limited attorney visitation hours at several detention centers;'"

- There were "'inadequate efforts to ensure the privacy of both in-person and telephonic attorney-client interviews;'" and

- "[D]etained noncitizens 'experienced difficulty reaching counsel when using collect call telephones.'"

App.1_034.  The Petition does not challenge *Orantes-Hernandez*'s reasoning or provide any reason to reconsider that decision.[5]

In addition, the panel's decision was consistent with—and supported by— DHS's own findings in October 2021 that the ability of noncitizens to continue to participate in their removal proceedings while in Mexico was "'upended by reality

---

[5] DHS regulations provide that individuals returned to Mexico under 8 U.S.C. § 1225(b)(2)(C) "shall be considered detained for a proceeding within the meaning of Section 235(b) of the [INA] ..."  8 C.F.R. § 235.3(d); *see also* 4-ER-581 ¶ 60 n.25 (citing MPP 1.0 implementation guidance).

in too many cases.'" App.1_033 (quoting October 2021 DHS Explanation Memo).

DHS noted the dramatic increase in *in absentia* removal orders for those held in

Mexico and this cohort's low rate of success in defending against removal. *Id.*

Defendants stubbornly ignore this evidence, failing even to mention it, even while

attempting to defend the one-hour limit on pre-hearing attorney consultations by

noting "that MPP placed no restrictions or burdens on meetings *prior* to that time"

while the noncitizen was in Mexico. Pet. 17. This is willful blindness.

## V. THE PANEL DID NOT "DISREGARD" THE SUPREME COURT'S DECISIONS IN *WOLF V. INNOVATION LAW LAB* OR *BIDEN V. TEXAS*.

To contrive justification for en banc review, the Petition accuses the panel of

"evad[ing]" and "ignor[ing]" two Supreme Court decisions relating to MPP 1.0:

*Wolf v. Innovation Law Lab* and *Biden v. Texas*. Defendants assert that the panel

"did not mention either of the[se] Supreme Court[] decisions involving MPP in

reaching the opposite conclusion" and "never tried to square its analysis ... with the

Supreme Court's." Pet. 19–20. These assertions are indisputably false.

In fact, the panel mentioned and analyzed both Supreme Court decisions. The

panel explained that the Supreme Court's single-paragraph memorandum decision

in *Wolf v. Innovation Law Lab*, 140 S. Ct. 1564 (2020), "does not control" because

*Wolf* "involved statutory claims fundamentally distinct from the statutory and

constitutional claims advanced by ImmDef here[.]" App.1_010 n.4. Indeed,

Defendants themselves have previously conceded that the present case is "unlike *Innovation Law Lab*." SER-19. The Petition mounts no challenge to the panel's reasoning or Defendants' own prior admissions in this case, instead—as just noted—claiming incorrectly that the panel ignored *Wolf*.

The panel also repeatedly discussed the Supreme Court's decision in *Biden v. Texas*, 597 U.S. 785 (2022). App.1_007, 011, 018, 027, 030. Indeed, the panel cited *Biden v. Texas* in commenting favorably on certain of Defendants' arguments. Specifically, the panel wrote that, although Defendants were "unable ... to articulate concrete evidence of irreparable harm," the district court's Section 705 stay risked harming "the Executive's ability to implement immigrant policy and foreign affairs as it sees fit." *Id.* at 018.

Weighing all the factors, the panel concluded that Defendants' "showing of irreparable harm" was "a weak one" outweighed by the "substantial and concrete harm that ImmDef will suffer upon reimplementation of MPP [1.0.]" *Id.* at 35, 38. This conclusion is consistent with, and was made after due consideration of, the Supreme Court's prior decisions relating to MPP, as just shown. Accordingly, Defendants have failed to demonstrate a need for en banc review.

18

## CONCLUSION

The Petition should be denied.

Respectfully submitted,

Dated: September 15, 2025

By: */s/ Hannah R. Coleman*

Steven L. Mayer
Sean M. SeLegue
ARNOLD & PORTER
KAYE SCHOLER LLP
Three Embarcadero Center, 10th Floor
San Francisco, CA 94111
(415) 356-3000

Matthew T. Heartney
Hannah R. Coleman
Daniel S. Shimell
Allyson C. Myers
ARNOLD & PORTER KAYE
SCHOLER LLP
777 South Figueroa Street, 44th Fl.
Los Angeles, CA 90017
(213) 243-4000

Kathleen X. Weng
ARNOLD & PORTER KAYE
SCHOLER LLP
601 Massachusetts Avenue, N.W.
Washington, D.C. 20001
(202) 942-5000

Melissa Crow
CENTER FOR GENDER &
REFUGEE STUDIES
1121 14th Street, NW, Suite 200
Washington, D.C. 20005
(202) 355-4471

Dulce Rodas
Edith Sangüeza
CENTER FOR GENDER &
REFUGEE STUDIES
200 McAllister Street
San Francisco, CA 94102
(415) 581-8843

Stephanie M. Alvarez-Jones
Victoria F. Neilson
NATIONAL IMMIGRATION
PROJECT OF THE NATIONAL
LAWYERS GUILD
1201 Connecticut Ave. NW
Suite 531 #896645
Washington, D.C. 20036
(202) 470-2082

19

Stephen W. Manning
Jordan Cunnings
Kelsey Provo
Tess Hellgren
Rosa Saavedra Vanacore
INNOVATION LAW LAB
333 SW 5th Ave, Suite 200
Portland, OR 97204
(503) 922-3042

*Attorneys for Plaintiff-Appellee*

## <u>CERTIFICATE OF COMPLIANCE</u>

This response complies with the type-volume limitation of Fed. R. App. P. 40(d) and Circuit Rule 40-1(b) because it contains 4,198 words, excluding the parts of the response exempted by Fed. R. App. P. 32(f). This response complies with the typeface and type style requirements of Fed. R. App. P. 32(a)(5) and 32(a)(6), respectively, because it has been prepared in a proportionately spaced typeface using Microsoft Word for Office 365 in Times New Roman 14-point font.

Dated:  September 15, 2025          */s/ Hannah R. Coleman*
                                    Hannah R. Coleman

## <u>CERTIFICATE OF SERVICE</u>

I certify that on September 15, 2025, I filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate ACMS system. I further certify that all participants in the case are registered ACMS users and that service will be accomplished through that system.

Dated:  September 15, 2025

*/s/ Hannah R. Coleman*

Hannah R. Coleman